The People of the State of Illinois, Plaintiff-Appellee, *v.* Ruby Williams, Defendant-Appellant.

(No. 57899;

First District (1st Division)—November 5, 1973.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant was found guilty of battery and carrying a concealed weapon, and was given concurrent sentences of twenty days in the House of Correction for each offense. She appeals from both convictions, and raises four issues for our consideration: (1) whether the evidence was sufficient to support the charge of battery; (2) whether she was proved guilty beyond a reasonable doubt of the charge of carrying a concealed weapon; (3) whether she knowingly waived her right to a jury trial; and (4) whether the sentence imposed by the trial judge was excessive.

First, with respect to the charge of battery, the State confesses error in the prosecution of that charge, so the conviction on that charge must be reversed. We then turn to the issues raised in connection with the charge of carrying a concealed weapon, and outline the course of events which led to this conviction.

On March 18, 1972, Police Officers O'Connor and Callahan responded to a radio call of a disturbance in the building at 4020 West Monroe Street in Chicago. Arriving at the scene, they immediately ascended to the second floor, where they observed a group of people gathered in the hallway, watching the defendant argue with a co-defendant, Melissa Minor. Ms. Minor was holding a large knife which she dropped, as soon as she saw the officers. Both officers testified that Ms. Williams was carrying a brown paper bag, in which there was a partially concealed sawed-off .22 caliber rifle. At trial the defendant testified that the gun was not in a bag, but that she had just retrieved it from her son, who was using the weapon to hit another child. The defendant had no license or registration for the gun. The officers testified that the gun was protruding from the top of the bag approximately four to five inches. When the officers asked her to hand over the rifle, a melee ensued, with each party giving a different version of the struggle, the details of which will not be discussed here, as the battery conviction is no longer an issue. The defendant was finally arrested, handcuffed and taken to the police station. She was tried and convicted of both offenses, and this appeal followed.

The first issue is whether the defendant is guilty of the charge of carrying a concealed weapon. She presents an alternative argument for our consideration, alleging: (1) that the testimony of the officers is not credible because the brown paper bag was not introduced into evidence; (2) even if the officer's testimony was considered to be credible, the defendant is still not guilty, as the concealment was only partial, and the officer could plainly see the gun from a distance; and (3) even if the facts as presented were sufficient to convict the defendant under the

statute, the statute is unconstitutional because it does not give understandable notice of the conduct proscribed.

■■ The statute in question is (Ill. Rev. Stat. 1971, ch. 38, par. 24.1), which reads in part:

"§ 24—1. Unlawful Use of Weapons.

(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; or \* \* \*."

Taking the defendant's third contention first, we do not agree that the statute does not give understandable notice of the conduct proscribed, for although the circumstances under which a person might be convicted are peculiar to the facts of each case, the general conduct proscribed is quite clear. The act is designed to protect innocent persons from being victimized by those who carry hidden weapons, as the potential for injury is very grave. The types of weapons that cannot be carried are clearly enumerated, and where they are not allowed to be kept is plainly stated. The defendant should have no reason to doubt that the carrying of a sawed-off gun in a brown paper bag is against the law. We therefore dismiss this contention as unfounded.

■■ Two questions of fact are also raised, the first being whether the testimony of the police officers was credible, in light of the circumstances surrounding the defendant's arrest, particularly the fact that the brown paper bag used to conceal the rifle was not offered in evidence. The question of the credibility of witnesses is to be determined by the trier of fact, and a reviewing court will only interfere where the evidence is so improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (See *People v. Washington,* 27 Ill.2d 104.) In the case, as presented in the record, no such doubt is apparent, and the lack of a brown paper bag, when one considers the struggle which occurred, is hardly sufficient to raise a reasonable doubt, and there is otherwise nothing in the testimony of the police officers which detracts from their credibility.

The second question raised by the defendant, that she is not guilty of concealment because part of the gun extended from the paper bag and noticed by the officers, attempts to distinguish the facts in this case from those in *People v. Euctice,* 371 Ill. 159, 20 N.E.2d 83, where our Supreme Court stated, at page 162, that:

"Defendants argue that they were not guilty of carrying concealed weapons for the reason that there is no evidence to show

the weapons were concealed; that, on the contrary, they were in full view of the officers when the officers opened the door. *People v. Niemoth*, 322 Ill. 51, is not controlling here. In that case we said, among other things, that there must be proof that a firearm is carried in such a manner as to give no notice of its presence. However, in that case the defendant was in the front seat of the car and the gun was on the floor of the rear seat. The decision there was based on the fact that the gun was not in such proximity to the accused as to be within easy reach and under his control. *The statute does not mean that the firearm shall be carried in such manner as to give absolutely no notice of its presence. It merely requires that the firearm shall be concealed from ordinary observation * * *.*" (Emphasis ours.)

This case seems to be directly on point, while the case of *People v. Crachy*, 131 Ill.App.2d 402, 268 N.E.2d 467, which the defendant cites, is far removed from the facts of this case. A sawed-off rifle in a brown paper bag is hardly comparable to a man carrying an automatic pistol in the waistband of his trousers. While we agree that if the weapon had been readily observable, the conviction could not stand, we do not so view the facts in the case at bar. Defendant claims that the officer could determine that she had a gun immediately; however, they were in a small hallway, and his attention was particularly attracted to her, as a party to a disagreement, where her opposite number was wielding a large knife, which is an entirely different situation than if she had been merely walking down the street. Thus we conclude that, on the facts as presented to us, there was no reasonable doubt that the defendant was apprehended carrying a concealed weapon.

██ Turning then to the third issue raised by the defendant, that she did not knowingly and understandingly waive her right to a jury trial, we have examined the record carefully and find this claim to be without factual foundation. The defendant initially appeared in court without counsel, and the court secured the services of the Public Defender for both the defendant and Ms. Minor, her co-defendant. It is clear from the quality of the defense which was presented, that the defendant and her attorney had ample time to confer about the handling of her case. This point was recently reviewed by this court in the case of *People v. Lewis*, 13 Ill.App.3d 688, where it was said:

"As stated in *People v. Sailor*, 43 Ill.2d 256, 260, 253 N.E.2d 397, 399, 'An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in,

and to be bound by, his action.' While we feel that the better practice would be for the court to address the defendant about his desire to waive a jury trial, the record as a whole does not support the claim that he did not knowingly and understandingly waive a jury trial."

This brings us to the fourth and last point raised by the defendant, that the sentence of twenty days in the House of Correction, imposed on a first offender who is a 27-year-old mother of four young children, was excessive and that probation would have been more appropriate. While we tend strongly to agree with this position, our Supreme Court, in *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 301 N.E.2d 300, recently directed an appellate court to vacate so much of its judgment as had granted probation and to remand the case to the trial court, saying, at page 557, that:

> "* * * Determination of this matter necessarily entails a factual analysis which should be made by the trial court * * *."

■■ The trial court's sentence of twenty days in the House of Correction was based upon two convictions, one for the battery of a police officer and the other for the concealment of a weapon upon her person. Inasmuch as we have, on confession of error by the State, reversed the first mentioned conviction, and since it is also obvious, from the record in this case that the trial court has not as yet considered probation, we vacate the sentence and remand the case to the trial court with directions to reconsider the sentence, including whether probation should be granted.

Affirmed in part, reversed in part and remanded with directions.

GOLDBERG and EGAN, JJ., concur.