THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CAROL WILSON, Defendant-Appellant.

(No. 60115;

First District (1st Division)—June 16, 1975.

1034

James J. Doherty, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Edna S. Epstein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Carol Wilson (defendant) was charged with unlawful use of a weapon. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4).) After a bench trial, defendant was found guilty and sentenced to 6 months' probation. The sole issue on appeal is whether defendant was proven guilty beyond a reasonable doubt.

Chicago Police Officer Louis Brown testified that, on December 3, 1973, he responded to a call that shots were being fired in an apartment at 4947 South Federal, Chicago. Upon his arrival he met defendant at the elevator. They had a conversation and defendant then handed him a .22-caliber revolver which she took from her "left coat pocket." Then he and defendant went upstairs and he spoke to defendant and her husband, Claude Smith. Brown testified, without objection, that he "found out" that defendant had no reason to have the gun in her possession so she was charged with the unlawful use of a weapon and Smith was charged with discharging a weapon. The witness did not see Smith fire any weapon. On cross-examination, Brown said that when defendant gave him the revolver she was in the building elevator.

Defendant testified that she was the wife of Claude Smith. She was in her apartment when she was arrested but she was in the elevator when she handed the revolver to the police officer. Defendant said she had a State identification card. Defendant's Exhibit 1 was identified as a Firearm Owner's Card issued by the Illinois Department of Law Enforcement. On cross-examination, defendant testified that before she handed the gun to the police officer it was in her "right dress pocket."

■■ Defendant argues that necessity required her to have the weapon in her pocket and to avoid a greater injury it was necessary for her to disarm her husband. Section 7—13 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 7—13) provides:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

This affirmative defense was not raised in the trial court in any manner. It may not be raised for the first time in a court of review. *People v. Howell*, 60 Ill.2d 117, 120, 121, 324 N.E.2d 403; *People v. McAdrian*, 52 Ill.2d 250, 253, 254, 287 N.E.2d 688; *People v. Studdard*, 51 Ill.2d 190, 198, 281 N.E.2d 678; *People v. Amerman*, 50 Ill.2d 196, 279 N.E.2d 353.

However, even if the point had been properly urged in the trial court, it would not assist defendant because the record is completely bare of evidence to support it. The officer testified that defendant told him her husband had shot a hole in the wall. The trial court sustained defendant's objection to this testimony and ordered it stricken. Further, Smith was found not guilty of discharging a weapon. Even if the officer's stricken testimony be considered, the fact that defendant asserted that her husband had discharged the weapon is not, by itself, sufficient to raise the issue of necessity. There is no other evidence showing how or why defendant had the gun concealed in her pocket while she was in the elevator and corridor of the apartment building where she lived.

Neither the events nor the motives upon which defendant now seeks by argument in this court to predicate the defense of necessity appear in the record. The police officer testified without objection that he "found out" that defendant had "no reason to have the gun and have it on [*sic*] her possession * * *." Defendant, by her own testimony and otherwise, has not made even a prima facie showing of necessity to carry the weapon concealed in her pocket while walking through the corridor and while in the elevator of the building. (*People v. Ballard*, 59 Ill.2d 580, 585, 322 N.E.2d 473. See also *People v. Warlick*, 13 Ill.App.3d 276, 300 N.E.2d 834 (abstract opinion), *leave to appeal denied*, 54 Ill.2d 599.) There, defendant testified that he wrestled with and disarmed a person holding a revolver because he was afraid the weapon would be discharged and hurt someone. This court held that this evidence did not make even a prima facie case of necessity to conceal the weapon. Compare *People v. Lampkins*, 28 Ill.App.3d 246, 328 N.E.2d 100, where this court affirmed rejection of the defense of necessity by the trial court under far stronger testimony supported by a degree of corroboration.

Defendant also argues here that she did not intend to conceal the weapon but that the only logical inference to be drawn from her conduct was that she took the weapon from her husband and gave it to Officer

Brown for safekeeping and that such conduct does not violate the language or the intent of the pertinent statute.

The statute provides (Ill. Rev. Stat. 1973, ch. 38, par. 24—1):

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm."

■■ The statutory exception, concealment of the weapon "on his land or in his own abode" is not applicable here. In *People v. Williams*, 15 Ill. App.3d 823, 305 N.E.2d 186, defendant was found guilty under the same statute for carrying a concealed weapon in the hallway of the building in which she lived. Public areas in an apartment building to which tenants and invitees have access are not the "abode" of any tenant. See *White v. United States* (D.C. App. 1971), 283 A.2d 21, 23, 24, 57 A. L. R. 3d 934, 957, and cases therein cited.

■■ As regards intent, the only intent required to be shown to sustain a conviction for carrying a concealed weapon is that defendant intended to place the weapon in its place of concealment. In *People v. Foster*, 32 Ill.App.2d 462, 178 N.E.2d 402, *leave to appeal denied*, 23 Ill.2d 623, defendant was found guilty of carrying a concealed weapon which he had kept in a zipper bag upon the front seat of his car. On appeal he raised the point that the People had failed to prove his intention to conceal the weapon. This court rejected that contention and held (32 Ill. App.2d 462, 468, 469):

"The only intent required to be shown to sustain a conviction for violation of this statute is that the defendant intended to place the weapon where it was placed. This was shown, as the defendant testified that he knew the gun was in the car. There is nothing requiring a showing that the defendant placed the gun in the bag specifically intending to conceal it in violation of the statute. This is not the type of crime requiring a specific intent, but rather it is a police power type of statute similar to the statute in People v. Fernow, 286 Ill. 627, 122 N.E. 155. That case involved a statute prohibiting any person from possessing a motor vehicle from which the serial numbers had been removed. In sustaining the conviction under the statute the court dealt with the question of intent and concluded, 'At common law a crime consisted of an unlawful act with evil intent, and in crimes created by statute a specific intent may be required so that the intent and act may constitute the crime, and in such cases the intent must be alleged and proved.

Where a specific intent is not an element of the crime it is not always necessary that a criminal intent should exist. In the exercise of the police power for the protection of the public the performance of a specified act may constitute the crime regardless of either knowledge or intent, both of which are immaterial on the question of guilt. For the effective protection of the public the burden is placed upon the individual of ascertaining at his peril whether his act is prohibited by criminal statute.' We believe the statute involved here is similar in that it does not require the proof of any specific intent to conceal the weapon, and the instructions given correctly set this out."

In addition to *People v. Fernow*, 286 Ill. 627, 122 N.E. 155, we find the same principle of law in *People v. Player*, 377 Ill. 417, 36 N.E.2d 729, involving the criminal offense of failing to file monthly returns under the Illinois Occupational Tax Act and in *People v. Walker*, 18 Ill.App.3d 351, 309 N.E.2d 716, involving a conviction for leaving the scene of an accident. In the case before us, the requisite intent was proved by defendant's own statement that she had carried a weapon concealed in her pocket from her apartment to the place in a public building corridor where she surrendered it to the police officer. Defendant's motives or her ultimate aims or plans for disposition of the weapon have no materiality here. It should also be noted that exercise of the police power by regulation of the use of weapons is a fundamental essential in our society today and its administration should be in complete accord with the letter of the law without deviation or abatement of any kind.

The trial court saw and heard these witnesses. Upon examination of the record, we cannot conclude that the evidence is so unsatisfactory as to raise a reasonable doubt of guilt and therefore the finding by the trial judge will not be disturbed. (*People v. Reese*, 54 Ill.2d 51, 59, 294 N.E.2d 288.) The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BURKE, P. J., concurs.

Mr. JUSTICE SIMON, dissenting:

I disagree with the assertion of the majority that the sole issue is whether defendant Carol Wilson was proved guilty beyond a reasonable doubt. There are other compelling reasons for reversing Mrs. Wilson's conviction and remanding the case for a new trial. One is that Mrs. Wilson was denied the effective assistance of counsel because she and her husband were tried together and represented by the same court-appointed public defender although they had inconsistent defenses. The

second reason for reversal is that the State's evidence raised the defense of necessity, but the public defender failed to urge it upon the court and the trial judge did not decide, as he should have, whether the State proved Mrs. Wilson guilty beyond a reasonable doubt on the issue of necessity.

Mrs. Wilson was charged with carrying a concealed weapon and her husband with discharging the weapon. The only witnesses were Police Officer Brown, the arresting officer, for the State, and Mrs. Wilson, who testified in her own behalf.

Officer Brown testified that he responded to a call of shots being fired in an apartment in the building where Mrs. Wilson lived. When he arrived in the building, he met Mrs. Wilson who had just reached the ground floor in the building elevator. She told him that her husband shot a hole in the wall of their apartment with a gun, took the gun out of the pocket of her dress and handed it to him, and he then arrested her.

Since her husband was not present at the conversation, the public defender objected on the ground of hearsay to Officer Brown's testimony about his conversation with Mrs. Wilson in which she told him what her husband had done. The objection was sustained and the testimony excluded. The officer next testified he did not see the husband fire the weapon and the husband was then discharged.

The public defender's interrogation of Mrs. Wilson was confined to showing she was in possession of the gun only while in her apartment and in the hallways and elevator of the building. The testimony was offered by the public defender to support the only defense he presented on Mrs. Wilson's behalf which was that the hallways and elevator of the apartment building were part of Mrs. Wilson's abode, and she was, therefore, exempt by the provision of section 24—1(a)(4) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 24—1(a)(4)),[1] permitting the carrying of a weapon in one's abode. As the majority opinion correctly points out, the interpretation which has been given to the statute does not recognize hallways and elevators of an apartment building as part of a tenant's abode, so this defense was properly rejected.

The only defense available to Mrs. Wilson was the affirmative defense of necessity.[2] On appeal, Mrs. Wilson argues that this defense was raised by Officer Brown's testimony that Mrs. Wilson told him her husband fired the gun. No evidence was presented by the public defender on the defense of necessity.

---

[1] The statute is set forth in the majority opinion.

[2] This defense is set forth in section 7—13 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 7—13), quoted in the majority opinion.

The defense of necessity required evidence showing that Mrs. Wilson's husband fired shots in their apartment and that to prevent him from continuing to fire the gun, she took it from him and left the apartment with the gun in her possession. To win acquittal for the husband, it was necessary for the public defender to keep such evidence out of the record. Mrs. Wilson's defense was antagonistic to that of her husband, and they should have been represented by separate counsel. The public defender's hearsay objection to Officer Brown's testimony demonstrates why it was inappropriate for the two defendants to be represented by the same counsel. Although hearsay when offered against her husband, the testimony was admissible as to Mrs. Wilson. Since it provided her only valid defense, counsel protecting Mrs. Wilson alone would not have moved to exclude it. By failing to provide her with separate counsel, the State deprived Mrs. Wilson of the effective assistance of counsel guaranteed by the sixth amendment. Although the need for separate counsel was not raised either at the trial or on this appeal, the facts demonstrate the deprivation of a substantial constitutional right; this court should note this defect under Supreme Court Rule 615(a).[3]

*Glasser v. United States* (1942), 315 U.S. 60, is instructive in appraising the adequacy of Mrs. Wilson's legal representation. The Court concluded that Glasser was denied effective assistance of counsel when the attorney he employed was appointed by the trial judge to represent Glasser's co-defendant in addition to Glasser. The codefendant had a defense inconsistent with Glasser's, and Glasser complained on appeal that the attorney failed to object to testimony which was hearsay as to him but helpful to his co-defendant. In reversing Glasser's conviction, the Court said:

> "Even as we have held that the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment, *Powell v. Alabama*, 287 U.S. 45, so are we clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." 315 U.S. 60, 70.

Glasser pointed out the possibility of inconsistent defenses to the trial

---

[3] Rule 615(a) provides: "(a) Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affected substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

court and then stood silent as the trial judge proceeded to appoint his lawyer to represent his codefendant. The Court held that this silence did not constitute free acquiescence in the appointment in the face of the duty of the trial court to preserve the fundamental rights of the accused, and that Glasser, an experienced assistant United States attorney, did not waive a right known to him by failing to press the issue in the trial court. Accordingly, it cannot be argued that Mrs. Wilson waived a similar right when she was obviously unaware of the legal subtleties giving rise to conflicting defenses between herself and her husband.[4]

The second reason for reversal is that the State itself placed the affirmative defense of necessity in evidence by Officer Brown's testimony that the husband shot a hole in the apartment wall, but then failed to prove beyond a reasonable doubt that this defense was not valid. Since Officer Brown's testimony was not hearsay as to Mrs. Wilson, there was no justification for striking it with regard to her, and it should be regarded as preserved in the record as to Mrs. Wilson.

If this testimony is preserved, the evidence, all offered by the State, shows that Mrs. Wilson's husband fired the shots. Within the time it took a police officer to respond to the call that shots were being fired, presumably a few minutes, Mrs. Wilson obtained possession of the gun her husband had used, placed it in her pocket, left the apartment and descended in the building elevator to the ground floor. When the elevator door opened, she saw Officer Brown, explained what had happened upstairs, voluntarily removed the gun from her pocket, and handed it to him. It is true, as the majority opinion points out, that the record is barren of specific testimony as to what happened to the gun between the time Mrs. Wilson's husband fired it and she placed it in her pocket. However, the inference that can be drawn from the record is that Mrs. Wilson took the gun away from her husband to prevent him from continuing to fire it, and this inference is sufficient to raise the affirmative defense of necessity. (Ill. Rev. Stat. 1973, ch. 38, § 7—13.) Although the

---

[4] Also to be noted are the Ethical Considerations set forth under Canon 5 of the Code of Professional Responsibility adopted by the Chicago and Illinois Bar Associations effective May 1, 1970, which establish the impropriety of the same lawyer representing potentially differing interests. These Considerations provide (EC 5-1) that a lawyer should not permit his loyalty to his client to be diluted by the interests of other clients and that (EC 5-15):

"If a lawyer is requested to undertake or continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. * * *"

evidence raised this affirmative defense, the trial judge never determined whether the State met its statutory burden of proving Mrs. Wilson guilty beyond a reasonable doubt as to the issue of necessity as the statutes require. (Ill. Rev. Stat. 1973, ch. 38, § 3—2; Ill. Rev. Stat. 1973, ch. 38, § 7—14.) [5] Reversal is required so that the court can make that determination in a new trial.

The majority opinion concludes that the following testimony of Officer Brown defeats Mrs. Wilson's defense of necessity:

"Mr. Solganick [assistant State's Attorney]: Q. And officer, what if anything, happened after the defendant, Carol Wilson handed you this weapon?

A. Well, we then went upstairs and talked to her and her husband and about the problem and found out that the lady did have no reason to have the gun and have it on her possession and charged her with the gun charges and him with the discharging the weapon."

The testimony that Mrs. Wilson had no reason to have the gun is a conclusion lacking in evidentiary value; even though it was not objected to or stricken, it must be ignored since it amounts to nothing more than Officer Brown's view on the ultimate issue in the case which was to be decided by the court and not by the police officer.

None of the causes (*People v. Ballard* (1975), 59 Ill.2d 580, 585, 322 N.E.2d 473; *People v. Warlick* (1973), 13 Ill.App.3d 276, 300 N.E.2d 834 and *People v. Lampkins* (1975), 28 Ill.App.3d 246, 328 N.E.2d 100) which the majority opinion relies on are relevant to the defense of necessity as it is raised in this case. No gun was discharged in any of them and the defense of necessity was predicated solely on the fear, belief or impression of the defendants in those cases that someone might get hurt or might fire a weapon. The situation which confronted Mrs. Wilson and on which she acted was that her husband had already fired the gun. In affirming *Lampkins*, the court concluded that the trial judge did not choose to believe the defendant's explanation for having a gun in his possession. In this case, the trial judge did not pass upon Mrs. Wilson's explanation because the record shows the only issue the trial court considered with respect to Mrs. Wilson's innocence or guilt was whether

---

[5] Section 3—2 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 3—2) provides: "Affirmative Defense. (a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

(b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

the common hallways and elevator of an apartment building are part of a person's "own abode" as that term is used in section 24—1(a)(4) (Ill. Rev. Stat. 1973, ch. 38, § 24—1(a)(4)). In addition, in none of these cases did the defendant approach a police officer, hand him the weapon and voluntarily surrender it as Mrs. Wilson did. In those cases the arresting police officer observed the gun sticking out of the defendant's pocket or tucked inside his belt and then placed the defendant under arrest.

This case should be reversed and remanded so that Mrs. Wilson has the opportunity to present fully her defense of necessity in a trial in which she is represented by counsel whose efforts are concentrated solely on her defense undiverted by the simultaneous defense of her husband and the court has the opportunity to decide whether the State's evidence proves Mrs. Wilson guilty beyond a reasonable doubt as to the issue of necessity.

