Daniel De NARDO, Appellant,

v.

STATE of Alaska, Appellee.

No. A-3710.

Court of Appeals of Alaska.

Oct. 25, 1991.

---

1. AS 25.20.060.

Daniel De Nardo, pro se.

Leroy K. Latta, Jr., Asst. Dist. Atty., Mary Anne Henry, Acting Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Daniel De Nardo was convicted, following trial in the district court at Anchorage, of third-degree weapons misconduct (carrying a concealed weapon), AS 11.61.220(a)(1). He appeals his conviction, contending that his conduct did not violate this statute or, alternatively, that the statute is unconstitutionally vague. We affirm.

Alaska State Trooper George Blickenstaff encountered De Nardo in the Anchorage courthouse and arrested him for outstanding traffic warrants. Blickenstaff asked De Nardo to accompany him and Trooper Simon Brown to the trooper office in the courthouse. As they approached the trooper office, Blickenstaff saw De Nardo put his left hand into the left side of his jacket. When De Nardo brought his hand out of the jacket, he was holding a long-bladed knife.

Blickenstaff started towards De Nardo. As he did so, Blickenstaff saw De Nardo put the knife into a briefcase he was carrying. Either Blickenstaff or Brown grabbed the briefcase from De Nardo, and the three men proceeded into the trooper office. In the office, Blickenstaff and Brown opened

the briefcase and found the knife, which proved to be eleven inches long.

Blickenstaff and Brown then took De Nardo to the holding area, where they performed a pat-down search of De Nardo. Blickenstaff found an empty knife sheath attached to De Nardo's belt, hanging inside De Nardo's left pant leg. Blickenstaff inserted the knife from the briefcase into the sheath and found that the knife fit.

De Nardo was charged with violating AS 11.61.220(a)(1):

> A person commits the crime of misconduct involving weapons in the third degree if [he or she] ... knowingly possesses a deadly weapon, other than an ordinary pocket knife, that is concealed on the person.

De Nardo elected to have a bench trial before District Court Judge Glen C. Anderson.

At trial, De Nardo testified that his knife had been inside his briefcase throughout the encounter with the troopers. He added that the knife had been in a cardboard sheath in the briefcase, not the sheath found inside his pant leg. De Nardo also testified that the item Blickenstaff saw him put into his briefcase was not the knife but rather an affidavit that De Nardo had just had notarized in the courthouse.

Judge Anderson found De Nardo guilty. While Judge Anderson indicated that he found the troopers' version of events to be more credible than De Nardo's, this was not the basis of the judge's decision. Instead, Judge Anderson declared that even if the facts had been as De Nardo claimed—that is, even if the knife had been in the briefcase the whole time—De Nardo would still be guilty of carrying a concealed weapon.

De Nardo argued that a knife carried in a briefcase is not concealed "on the person" as required by AS 11.61.220(a)(1). But Judge Anderson rejected this interpretation of the statute. He stated:

> If the knife were in the sheath and still contained within the briefcase, I would still find Mr. De Nardo guilty of the offense and find that each of the elements was met.... Clearly it's con-

cealed. The knife is very easy to conceal inside the case.... I would hold, as a matter of law, that even if [the knife] were concealed only inside the case which Mr. De Nardo carried, that that is "on his person" within the meaning of the statute.

In making this ruling, Judge Anderson relied upon the definition of "on the person" found in *Black's Law Dictionary. See Black's Law Dictionary,* (5th ed. 1979), p. 983. According to *Black's,* "on the person" encompasses items "in contact with [the defendant's] person or ... carried in his clothing." Judge Anderson concluded that, even crediting De Nardo's account, the knife had been concealed in the briefcase that De Nardo was carrying into the courthouse. Thus, because the briefcase was in immediate contact with De Nardo's person, Judge Anderson ruled that De Nardo had violated the statute.

De Nardo's knife was clearly "concealed" within the meaning of AS 11.61.-220(e):

> For purposes of [AS 11.61.220], a deadly weapon on a person is concealed if it is covered or enclosed in any manner so that an observer cannot determine that it is a weapon without removing it from that which covers or encloses it or without opening, lifting, or removing that which covers or encloses it.

On appeal, however, De Nardo renews his claim that a deadly weapon concealed in a briefcase is not "on the person" within the meaning of AS 11.61.220(a)(1).

Case law from around the country supports the proposition that a person who carries a deadly weapon in a purse, a briefcase, or even a paper bag commits the offense of carrying a concealed weapon. *See,* for example, *People v. Foster,* 32 Ill. App.2d 462, 178 N.E.2d 402, 404 (1961) (handgun in a zippered athletic bag); *State v. Britt,* 200 Neb. 601, 264 N.W.2d 670, 673 (1978) (handgun in a gymnasium bag); *Bell v. State,* 179 Ga.App. 790, 347 S.E.2d 725, 726 (1986) (handgun in a zippered shaving kit carried in the defendant's hand); *Schaaf v. Commonwealth,* 220 Va. 429,

258 S.E.2d 574 (1979) (handgun in a purse); *State v. Molins*, 424 So.2d 29, 30 (Fla.App. 1982) (handgun in a zippered gun case within a zippered canvas suitcase); *Rogers v. State*, 336 So.2d 1233, 1234 (Fla.App.1976) (handgun in a briefcase); *State v. Straub*, 715 S.W.2d 21, 22 (Mo.App.1986) (handgun in a paper bag); *People v. Williams*, 15 Ill.App.3d 823, 305 N.E.2d 186, 187 (1973) (sawed-off rifle in a paper bag).[1]

De Nardo correctly points out that most concealed weapons statutes from other states differ from AS 11.61.220(a)(1) because they employ the phrase "about the person" rather than "on the person". He notes that courts have traditionally interpreted the word "about" more broadly than the word "on". *See*, for example, *Anchorage v. Lloyd*, 679 P.2d 486, 487 (Alaska App.1984). From this, De Nardo argues that the Alaska legislature's formulation of the offense should be read as a rejection of the majority view concerning weapons carried in purses, briefcases, and other containers.

■ We conclude, however, that the phrase "on the person" is broad enough, without the additional word "about", to encompass weapons concealed either in clothing or in purses, briefcases, or other hand-carried containers. We reach this conclusion for several reasons.

As noted above, this construction of "on the person" finds support in *Black's Law Dictionary*. More importantly, this construction has been adopted by those few states that, like Alaska, have a statute referring only to weapons concealed "on" or "upon" the person. *See People v. Pugach*, 15 N.Y.2d 65, 255 N.Y.S.2d 833, 204 N.E.2d 176 (1964) (handgun carried in a briefcase), and *People v. Dunn*, 61 Cal. App.3d Supp. 12, 132 Cal.Rptr. 921 (1976) (handgun carried in a suitcase).

A similarly broad definition of "person" is employed in defining the crime of larceny "from the person". Such larceny includes thefts of a purse or suitcase which has been set down beside or in the immediate presence of its owner. *R. Perkins & R. Boyce, Criminal Law* (3rd ed. 1982), pp. 341–43. A similarly extensive definition of "person" is employed in defining the tort of battery, which in general terms is "harmful or offensive contact with another person". *Prosser & Keeton on Torts* (5th ed. 1984), § 9, p. 39. *Prosser* explains that, for purposes of battery, contact with the "person" of another includes contact with:

> any part of the body or to anything which is attached to it and practically identified with it. Thus, … contact with the plaintiff's clothing, or with a cane, a paper, or any other object held in the plaintiff's hand will be sufficient[.]

*Prosser* at 39–40.

The legislative history of AS 11.61.220 also supports our construction of the phrase "on the person". Before the enactment of the present criminal code, the governing statute was former AS 11.55.010, which read: "It is unlawful for a person to carry concealed about his person, in any manner, [enumerated weapons]." In place of this law, the Criminal Code Revision Subcommission proposed a statute that prohibited anyone from carrying a deadly weapon either "concealed on his person" *or* "concealed in any place about his person where the deadly weapon is readily accessible for use". TD 11.71.120(a)(1), Alaska Criminal Code Revision, Part 5 at 102–03 (Tent.Draft 1978).

The Subcommission Commentary states that the second clause of the proposed statute, "in any place about his person where the deadly weapon is readily accessible for use", was intended "to insure that weapons

---

1. For a compilation of cases, see the annotation, *Offense of Carrying Concealed Weapon as Affected by Manner of Carrying or Place of Concealment*, 43 A.L.R.2d 492 (1979). For another general discussion of this point of law, see 79 Am. Jur.2d *Weapons and Firearms* § 11 (1975). The American Jurisprudence article lists only two cases deviating from the general rule that a person "carries a concealed weapon" when he

or she carries the weapon concealed in a purse, bag, briefcase, or other hand-carried container: *State v. Weston*, 108 S.C. 383, 94 S.E. 871 (1918), and *Sutherland v. Commonwealth*, 109 Va. 834, 65 S.E. 15 (1909). Both of these cases are from the early years of this century, and one of them—*Sutherland*—was overruled in *Schaaf v. Commonwealth*, 220 Va. 429, 258 S.E.2d 574 (1979).

concealed in areas such as under the front seat of an automobile or in an unlocked glove compartment would be prohibited by the section". *Id.* at 114. In other words, the second clause of the statute was intended to reach weapons that were not being carried "on" or "upon" the person's body (as that phrase had been defined in case law prior to 1978) but that were nevertheless within easy reach. In its commentary, the Subcommission anticipated the decision in *Anchorage v. Lloyd,* 679 P.2d at 487–88, where this court interpreted similar language in a municipal ordinance to apply to a firearm concealed beneath an automobile seat.

When the legislature adopted AS 11.61.-220(a)(1), it struck the proposed statute's second clause. In its commentary, the legislature explicitly rejected the Subcommission's proposal to prohibit the carrying of concealed weapons in vehicles: "A weapon concealed in an automobile is not 'concealed on a person'". Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 103, 1978 Senate Journal 1399. The legislature provided no other pertinent commentary.

The legislature's explicit mention of weapons carried in automobiles, combined with its failure to provide further commentary on the meaning of "on the person", leads us to conclude that the legislature, when they deleted the Subcommission's phrase "about the person", intended only to reject the Subcommission's proposal to prohibit concealed weapons in automobiles. The legislature did not intend to make Alaska's statute the most restrictive in the United States.[2]

The legislature's intention to have the phrase "on the person" encompass purses, briefcases, backpacks, and other containers carried in contact with the body is further elucidated by the definition of "concealed" adopted in AS 11.61.220(e). This definition is phrased in the most general terms; a weapon is "concealed" if it is:

> covered or enclosed in any manner so that an observer cannot determine that it is a weapon without removing it from that which covers or encloses it or without opening, lifting, or removing that which covers or encloses it.

These extremely general references—"covered or enclosed in any manner", removal of the weapon "from that which covers or encloses it", and "opening, lifting or removing that which covers or encloses" the weapon—would seem unneeded and unnecessarily oblique if the legislature were simply referring to weapons concealed in the pockets or folds of a person's clothes. Thus, the wording of AS 11.61.220(e) further bolsters our conclusion that the legislature intended section 220(a)(1) to cover weapons carried in a purse or briefcase.

Moreover, the policy underlying concealed weapons statutes is to prevent the surprise use of deadly force by prohibiting people from "having, readily available for use, weapons of which others are unaware". *Anchorage v. Lloyd,* 679 P.2d at 487. In view of this policy, it makes little sense for the legislature to prohibit people from carrying deadly weapons concealed in the pockets of their vests or trousers but at the same time allow the concealment of such weapons in purses, briefcases, or other satchels that people commonly carry.

■ De Nardo points out that, when there is a question regarding the construction of a criminal statute, the statute must be construed in favor of the defendant and against the government. But this rule of lenity or strict construction comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous. *Dixson v. United States,* 465 U.S. 482, 491, 104 S.Ct. 1172, 1177, 79 L.Ed.2d 458 (1984); *State v. Stores,* 816 P.2d 206, 211–12 (Alaska App.

---

**2.** For instance, the legislature rejected the Subcommission's suggestion in TD 11.71.120(c) that the statute should allow the wearing of weapons in a holster, scabbard, or sheath so long as the container was at least partially visible—a provision that would have overruled *McKee v. State,* 488 P.2d 1039, 1042, 1043 n. 5 (Alaska 1971). The legislature deleted the Subcommission's language, reaffirming the decision in *McKee* that partially visible weapons may yet be "concealed" if they are effectively hidden from ordinary observation.

1991). We have concluded that the legislature's intent on this issue can be ascertained.

■ For these reasons, we hold that De Nardo's act of carrying a long-bladed knife in a briefcase constituted the concealment of a dangerous weapon "on his person" in violation of AS 11.61.220(a)(1).

■ De Nardo next argues that if AS 11.61.220(a)(1) is construed to include the carrying of a dangerous weapon in a briefcase, then the statute must be unconstitutionally vague because reasonable people could reach differing interpretations of the phrase "on the person". But the fact that people can, in good faith, litigate the meaning of a statute does not necessarily (or even usually) mean that the statute is so indefinite as to be unconstitutional. The question is whether the statute's meaning is unresolvably confused or ambiguous *after* it has been subjected to legal analysis. If study of the statute's wording, examination of its legislative history, and reference to other relevant statutes and case law makes the statute's meaning clear, then the statute is constitutional. *Larson v. State,* 564 P.2d 365, 372 (Alaska 1977); *Stock v. State,* 526 P.2d 3, 8 n. 12 (Alaska 1974); *Linne v. State,* 674 P.2d 1345, 1350 (Alaska App.1983). *See also Michael v. State,* 767 P.2d 193, 199–200 (Alaska App.1988) (rejecting the contention that a statute must be unconstitutionally vague if it can be interpreted to apply to a category of cases not litigated before).

■ While reasonable people might differ about the outer boundaries of the phrase "on the person", the wording and history of AS 11.61.220, in combination with the relevant case law, make it clear that this phrase encompasses purses, briefcases, and other hand-carried containers. Thus, the statute does not suffer from unconstitutional vagueness as applied to the facts of De Nardo's case. *See Summers v. Anchorage,* 589 P.2d 863, 868 (Alaska 1979); *Michael,* 767 P.2d at 199–200.

■ Finally, De Nardo asserts that, even if his conduct is covered by AS 11.61.-220(a)(1) and even if the statute is constitutional, he still should have been acquitted because he believed in good faith that the statute did not apply to him; thus, he claims, he did not "knowingly" violate this statute. But AS 11.81.620(a) declares that, unless the legislature has specifically provided otherwise, neither "[k]nowledge … as to whether conduct constitutes an offense" nor "knowledge … as to the existence, meaning, or application of the provision of law defining an offense" is an element of any crime.

The judgement of the district court is AFFIRMED.