848 P.2d 1115

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Roy Lee POWELL, Defendant– Appellant.**

**No. 13756.**

Court of Appeals of New Mexico.

Feb. 15, 1993.

Tom Udall, Atty. Gen., Elizabeth Blaisdell, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for defendant-appellant.

OPINION

HARTZ, Judge.

Defendant was convicted at a non-jury trial of a violation of NMSA 1978, Section 30–7–3(A) (Repl.Pamp.1984), which prohibits the "[u]nlawful carrying of a firearm in

an establishment licensed to dispense alcoholic beverages." On appeal he contends that the State was required to prove his conscious wrongdoing and that there was insufficient evidence of that element of the offense. He does not dispute that the trial judge properly found that he intentionally carried a firearm in a bar licensed to dispense alcoholic beverages. We affirm.

On February 5, 1991, Defendant was released from jail on charges arising from a stabbing at the Greystoke Lounge three days earlier. He and a friend then went to the home of the Greystoke bartender, Karla Coffer, and told her they planned to go to the bar that night. She warned them not to bring any weapons. When Defendant arrived at the Greystoke, he laid a knife on the bar and told Ms. Coffer that he was checking his weapon so that there would not be any problems. A couple of hours later he handed her a loaded pistol, again saying that he wanted to avoid problems. At trial Defendant testified that the pistol originally had been in his car outside the bar, but when he went to his car for cigarettes, he found that the window had been forced open, so he brought the pistol to the bartender to prevent it from being stolen. The arresting officer, however, testified that the car windows appeared to be intact at the time of the arrest. The State contended that Defendant brought the weapon into the bar to show the other patrons that he was armed.

Section 30–7–3(A) states:

Unlawful carrying of a firearm in an establishment licensed to dispense alcoholic beverages consists of carrying a loaded or unloaded firearm on any premises licensed by the department of alcoholic beverage control for the dispensing of alcoholic beverages except:

(1) by a law enforcement officer in the lawful discharge of his duties;

(2) by the owner, lessee, tenant or operator of the licensed premises or their agents, including privately employed security personnel during the performance of their duties;

(3) by a person in that area of the licensed premises usually and primarily rented on a daily or short-term basis for sleeping or residential occupancy, including hotel or motel rooms; or

(4) by a person on that area of a licensed premises primarily utilized for vehicular traffic or parking.

The statute does not define the state of mind necessary for commission of the crime.

To support his contention regarding the scienter element of the crime, Defendant relies on *State v. Austin*, 80 N.M. 748, 461 P.2d 230 (Ct.App.1969). Rejecting an argument that the statute defining the crime of unlawful taking of a vehicle was unconstitutionally vague and uncertain, *Austin* held that criminal intent was an element of the crime, even though it was not expressly included in the statutory definition. Defendant does not rely so much on the holding of *Austin* as on certain language in the opinion. *Austin* quoted the following proposition, which originally appeared in *State v. Shedoudy*, 45 N.M. 516, 524, 118 P.2d 280, 285–86 (1941):

Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, although the terms of the statute do not require it. But the legislature may forbid the doing of an act and make its commission criminal, without regard to the intent with which such act is done; but in such case it must clearly appear from the Act (from its language or clear inference) that such was the legislative intent.

*Austin*, 80 N.M. at 750, 461 P.2d at 232 (citations omitted). *Austin* then added:

What is criminal intent? It is more than "intentional" taking. It is a mental state. This mental state is a conscious wrongdoing. Concerning this conscious wrongdoing, *Morissette v. United States*, 342 U.S. 246, [252, 72 S.Ct. 240, 244, 96 L.Ed. 288] (1952) states: " * * * courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as 'felonious intent,'

'criminal intent,' 'malice aforethought,' 'guilty knowledge,' 'fraudulent intent,' 'wilfulness,' 'scienter,' to denote guilty knowledge, * * *." *Id.* (citation omitted). From this language Defendant concludes that the State was required to prove his "conscious wrongdoing" in this case. Although Defendant does not attempt to define the requisite mental state, he apparently construes the "conscious wrongdoing" requirement to mean that he must have possessed an evil intent in carrying the firearm in the Greystoke Lounge.

We disagree. One must be careful not to take the language of *Austin* and *Morissette* out of context. Both opinions dealt with larceny-type offenses. Morissette had been convicted of the offense of converting government property. He contended that he thought the property (which was rusting bomb casings dumped in heaps on a bombing range) had been abandoned. The trial judge refused to submit to the jury whether Morissette acted with innocent intention. The Supreme Court reversed, holding that the offense required more than just the intent to take the casings. The offense also required "knowledge of the facts, though not necessarily the law, that made the taking a conversion." *Morissette*, 342 U.S. at 271, 72 S.Ct. at 254. The Court presumed that Congress had adopted the common-law tradition of requiring such a mental state in larceny-type offenses.

The mental state required in larceny-type offenses—intent to take, coupled with knowledge of the facts making the taking unlawful—can be viewed as an "evil" intent. But we should not infer too much from *Austin's* description of this intent as "conscious wrongdoing." In particular, we should not read *Austin* to say that evil intent is presumed to be an element of every crime. Only a few months before the decision in *Austin* the same panel of this Court decided *State v. Davis,* 80 N.M. 347, 455 P.2d 851 (Ct.App.), *cert. denied,* 80 N.M. 316, 454 P.2d 973 (1969), which was cited with approval in *Austin.* The defendant in that case was charged with unlawful possession of mercury. Although the language of the statute prohibiting possession of mercury did not include an intent

element, *Davis* held that, in accordance with *Shedoudy,* "criminal intent—that is, an intent to possess the mercury—is required for violation of [the statute]." *Davis,* 80 N.M. at 351, 455 P.2d at 855. *Davis* did not require an evil intent.

Moreover, later cases have used the words "conscious wrongdoing" to describe a mental state that could not properly be termed an evil intent. In *State v. Sheets,* 94 N.M. 356, 610 P.2d 760 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980), the defendant was convicted of the sale of unregistered securities. He complained that the jury was not instructed that he must have acted with a sense of conscious wrongdoing. We responded that the instruction given on general criminal intent "sufficiently covers conscious wrongdoing in the words 'purposely does an act which the law declares to be a crime.' " *Id.* 94 N.M. at 366, 610 P.2d at 770. Our Supreme Court has agreed that a defendant possesses the mental state of conscious wrongdoing when he or she purposefully does an act that the law declares to be a crime. *E.g., State v. Omar-Muhammad,* 105 N.M. 788, 791, 737 P.2d 1165, 1168 (1987).

The lesson we draw is that a determination of the state-of-mind element of an offense must be made on a statute-by-statute basis. In the absence of express statutory language to the contrary, we presume an intent requirement. *See State v. Shedoudy.* But the presumption can be overcome. *See State v. Harrison,* 115 N.M. 73, 846 P.2d 1082 (Ct.App.1992) (intent not an element of offense of driving while intoxicated). Furthermore, the intent that is ordinarily presumed is not an "evil" intent. In many contexts it may even be somewhat misleading to speak of the presumed intent as "conscious wrongdoing," because that phrase may easily be misread as connoting evil intent, despite the gloss put on the phrase by *Sheets* and its successors. To determine the presumed intent, we should not be trapped by a verbal formula but should, as in *Morissette,* simply look at the particular mental state ordinarily required for crimes of the same nature.

■ The crime of which Defendant was convicted is a possession-type crime. As in *Davis*, New Mexico courts have generally presumed that the mental element for such crimes is just that the possession be intentional—in other words, that the offender have knowledge of the possession. *E.g., State v. Pedro*, 83 N.M. 212, 490 P.2d 470 (Ct.App.1971) (possession of peyote); *State v. Giddings*, 67 N.M. 87, 96, 352 P.2d 1003, 1009 (1960) (possession of marijuana; defendant must have "knowledge of the presence and narcotic [sic] character of the object possessed"); *State v. Maes*, 81 N.M. 550, 554, 469 P.2d 529, 533 (Ct.App.1970) (heroin). *See* SCRA 1986, 14–130 (uniform jury instruction defining "possession" states that person is in possession of an object when the person knows what the object is and knows that it is on his or her person).

In particular, the intent element in firearm-possession offenses is typically no more than knowledge of possession. We have held that the crime of possession of a firearm by a convicted felon requires only knowledge by the felon that the object possessed is a firearm. *State v. Haddenham*, 110 N.M. 149, 155–56, 793 P.2d 279, 285–86 (Ct.App.), *cert. denied*, 110 N.M. 72, 792 P.2d 49, *and* 110 N.M. 183, 793 P.2d 865 (1990); *see State v. Castrillo*, 112 N.M. 766, 771, 819 P.2d 1324, 1329 (1991). Other jurisdictions have similarly interpreted statutes barring possession of firearms in various circumstances. *See United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (consciousness of wrongdoing is not element of offense of possession of unregistered firearm); *United States v. Dishman*, 486 F.2d 727 (9th Cir.1973) (intent to use the weapon is not element of offense of attempting to board an aircraft while carrying a concealed dangerous weapon); *Wright v. Municipality of Anchorage*, 590 P.2d 425 (Alaska 1979) (possession of concealed weapon); *People v. Wilson*, 29 Ill.App.3d 1033, 332 N.E.2d 6 (1975) (same); *Uribe v. State*, 573 S.W.2d 819 (Tex.Crim.App.1978) (possession of firearm in licensed bar); *see also* Wash. Rev.Code Ann. § 9.41.300 (West 1988) (knowing possession of firearm in specified places).

Such a limited intent requirement conforms to the evident purpose of a statute barring the possession of firearms in taverns. That purpose is a prophylactic one. The mixture of firearms and alcohol is volatile. The danger does not necessarily arise from any evil intent on the part of the person possessing the firearm. The state's interest in keeping firearms out of establishments dispensing liquor is independent of any designs by the possessor of the weapon. *Cf. State v. Soto*, 95 N.M. 81, 82, 619 P.2d 185, 186 (1980) (purpose of § 30–7–3 is to protect innocent patrons); *United States v. Margraf*, 483 F.2d 708, 710 (3d Cir.1973) ("[M]ere presence of a weapon on board a plane creates a hazard because it may be seized and used by a potential hijacker."), *vacated*, 414 U.S. 1106, 94 S.Ct. 833, 38 L.Ed.2d 734 (1973).

Our rejection of Defendant's argument finds support in the uniform jury instructions promulgated by our Supreme Court with respect to the offense of which Defendant was convicted. The elements instruction requires the jury to find: (1) that the establishment was licensed to dispense alcoholic beverages; (2) that while in the establishment, the defendant was carrying a firearm; and (3) if applicable, that the defendant did not have legal authority to have the firearm in his possession in the establishment. SCRA 1986, 14–702. The general-criminal-intent instruction then requires the jury to find that the defendant acted intentionally in that he or she purposely did an act which the law declares to be a crime, whether or not the defendant knew the act to be unlawful. SCRA 1986, 14–141. Nothing in the uniform jury instructions suggests that an evil intent is necessary for a violation of Section 30–7–3(A).

Finally, we disagree with Defendant's contention that *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991), supports his position. *Osborne* held that unlawfulness is an element of the offense of criminal sexual contact of a minor and the jury must be instructed accordingly. That element, however, appears expressly in the statutory definition of the offense. NMSA 1978, Section 30–9–13 states, "Criminal sexual con-

tact of a minor is unlawfully and intentionally touching or applying force to the intimate parts of a minor * * *." *Osborne* was not a case in which a court implied an element of the offense that was not stated in the statutory definition. The statute at issue here, Section 30–7–3, in contrast to Section 30–9–13, does not include the words "unlawful" or "unlawfully" as part of the definition of the offense. The word "unlawful" appears in Section 30–7–3 only as part of the name of the offense and refers to the provision in the statute exempting four types of lawful carrying of firearms. No evidence at Defendant's trial supported any of the exemptions, and the trial court expressly so found. The district court here did not ignore an explicitly defined element of the offense of unlawful carrying of a firearm. *Osborne* does not help Defendant.

Thus, we conclude that Defendant's conviction did not require proof of an evil purpose. Defendant's conviction is affirmed.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.