## Richmond

FRANCES MARIE SCHAAF

v.

COMMONWEALTH OF VIRGINIA

October 5, 1979.

Record No. 781622.

Present: All the Justices.

*W. R. Gambill* (*Gambill & Martin,* on brief), for appellant.
*James E. Kulp, Deputy Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

This case involves Code § 18.2-308, which provides, in part, that "if any person carry about his person, hid from common observation, any pistol, . . . he shall be guilty of a Class I misdemeanor, . . ."

On March 20, 1978, Mrs. Frances Marie Schaaf appeared at the Henrico County Juvenile and Domestic Relations Court to attend a hearing on a petition for an increase in the amount that her husband should pay for the support of their children. Near the entrance to the courtroom is the court's security scanner. This machine is designed to detect certain grades of metal, and those who have business before the court are required to walk through the device before entering the courtroom. As Mrs. Schaaf went through, a deputy sheriff assigned to operate the scanner asked to see her handbag. Mrs. Schaaf complied with the request, and when the officer opened the handbag and began a search, Mrs. Schaaf stated, "It's in the bottom." When asked what was in the bottom, Mrs. Schaaf replied, "I have a gun."

The defendant's gun was a .25 automatic Titan handgun with five rounds of ammunition in the clip and one bullet in the chamber. The handbag was described as "a brown, zippered handbag, the zipper being at the top." The officer testified that Mrs. Schaaf expressed surprise at her arrest and stated that she did not know that it was against the law to carry the gun in her handbag. She did not have a permit to carry a concealed weapon.

Defendant was charged with carrying a concealed weapon and was convicted in the General District Court of Henrico County and, upon appeal, in the circuit court of the county.[1] Relying upon *Sutherland's Case,* 109 Va. 834, 65 S.E. 15 (1909), Mrs. Schaaf seeks a reversal of the order of the court below imposing upon her a fine of $35.

Virginia's concealed weapon statute has remained essentially unchanged for a period of seventy years. The relevant words of the statute are "if any person carry about his person, hid from common observation, any pistol. . . ." The defendant in *Sutherland* "placed a pistol, encased in its scabbard, in a pair of saddle-bags, pulled the lids of the saddle-bags down, hiding the pistol from view, and carried the saddle-bags in his hand down the road. . . ." 109 Va. at 834-35, 65 S.E. at 15. The court, in reversing the defendant's conviction, said:

> The purpose of the statute was to interdict the practice of carrying a deadly weapon about the person, concealed, and yet so accessible as to afford prompt and immediate use. "About the person" must mean that it is so connected with the person as to be readily accessible for use or surprise if desired. A pistol in a

---

[1] The warrant charged the defendant with "Poss of Concealed Weapon," citing Code § 18.2-308. It is clear that the prosecution and conviction in the courts below were under § 18.2-308 for "carrying" a concealed weapon.

scabbard and in a pair of saddle-bags with the lids down, though the saddle-bags be in the hand, does not fall within the language of the statute, . . .

109 Va. at 835-36, 65 S.E. at 15.

Although there are obvious differences between the accessibility of a gun in a lady's handbag and a gun encased in a scabbard[2] and carried in a saddlebag[3] with the lid down, our holding in *Sutherland* is strong precedent supporting the position of the defendant. However, *Sutherland* was decided seventy years ago, and it is doubtful that this court in 1909 envisioned the modern day handbag commonly used by most women and by some men.

Handbags are made in various sizes, colors and styles, and some are designed to carry a great number of articles deemed necessary or convenient by the carrier. The bags are often supported by shoulder straps and are easily opened and closed by devices such as zippers, buckles or stays. A pistol carried in such a bag is not only near and about the carrier's person, hidden from common observation, but in some handbags it is so accessible that it could be fired without being removed therefrom. "[I]t is so connected with the person as to be readily accessible for use or surprise if desired. . . ." *Sutherland, supra,* 109 Va. at 835, 65 S.E. at 15.

A gun in a saddlebag, although not readily accessible, did provide a measure of protection to a horseman traveling primarily in rural areas. It did not pose a serious and immediate threat to others. A gun in a shoulder bag or a large handbag is accessible and could pose a major problem and danger to the general public. Each day in this country thousands of homicides, assaults and robberies are perpetrated by the use of handguns. This knowledge prompted the General Assembly of Virginia to deny to all but a few officials permission to carry a concealed weapon, and to require all others who desire such permission to make written application and submit satisfactory proof of good character and necessity to the circuit court. The legislature also limited to one year the time such a permit could be granted by the court. Code § 18.2-308.

---

[2] "Scabbard" is defined in *Webster's Third New International Dictionary* 2022 (1966) as a "leather or metal sheath in which the blade of a sword, dagger, bayonet or other cutting weapon is enclosed when not in use; a sheath for carrying a hand weapon (as a carbine) or a tool (as a saw) for ready use. . . ."

[3] "Saddlebag" is defined in *Webster's, supra,* at 1997, as "a large bag or pouch of leather or a textile fabric carried hanging from one side of a saddle and commonly one of a pair united by a band or strap and so hung that the weight is evenly distributed. . . ."

A reversal of defendant's conviction would in effect judicially sanction the carrying of a concealed weapon by all persons, male and female, who own a shoulder bag or a handbag. It would render useless the statute now requiring that permission be first obtained from the court by anyone who desires to carry a concealed weapon.

Respect for and adherence to the rule of *stare decisis* does not require such a course of action on our part. While *Sutherland* can be distinguished from this case on the facts, to the extent that there may be a conflict *Sutherland* is overruled.

Our decision accords with the rule of a majority of jurisdictions that have addressed the issue. They hold that the carrying of a weapon in a handbag or other similar article, held in the hand or placed under the arm, constitutes concealment of a weapon on or about the person. *See* 79 Am.Jur.2d *Weapons and Firearms* § 11 (1975); Annot., 43 A.L.R.2d 492, 534 (1955); 94 C.J.S. *Weapons* § 8 (1956).

The judgment of the court below is

*Affirmed.*

COMPTON, J., dissenting.

Upon the threshold, it should be stated that I fully share the majority's policy concerns about the danger created by the unlawful use of handguns in today's society. Nevertheless, I disagree with the majority's decision in this case for two reasons.

First, I feel bound to apply the ancient maxim that a penal statute must be construed strictly against the State and favorably to the citizen. Speaking of that settled rule, this court said in *Sutherland* v. *Commonwealth,* 109 Va. 834, 835, 65 S.E. 15, 15 (1909):

The maxim is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislature and not in the judicial department. No man incurs a penalty unless the act which subjects him to it is clearly within the spirit and letter of the statute which imposes such penalty. There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute. If these principles are violated, the fate of the accused is determined by the arbitrary discretion of the judges and not by the express authority of the law.

Applying this principle to the facts of this case, I am of opinion that the act of which the defendant stands convicted did not come within the spirit or the letter of the statute in question.

Insofar as pertinent here, Code § 18.2-308 provides as follows:

If any person carry about his person, hid from common observation, any pistol, . . . he shall be guilty of a Class 1 misdemeanor, . . .

The proscription of the statute is not directed to the mere act of carrying a pistol, or similar weapon listed therein (*e.g.,* dirk, bowie knife, switchblade knife, razor, metal knucks); the simple act of bearing openly such a weapon is not made unlawful. Rather, the punishment for the crime is aimed at preventing a person from acquiring by concealment the ability and power to do a wrongful act. In other words, this enactment seeks to prevent a person from carrying a deadly weapon of the type enumerated in such a manner and in such a way as to enable that person to surprise another by his latent ability to cause death or bodily harm. That this is true is implicit from the statute, which focuses upon the practice of concealing a deadly weapon *about the person.*

Significant is the fact that in the first clause the word "person" is used twice: "If any person carry about his person, . . ." The first use of the word is in a generic sense, meaning "an individual human being . . . (any *person* present)." Webster's Third New International Dictionary 1686 (1971). The second use of the term is in a more limited and restricted sense; it refers to the physical "body of a human being as presented to public view usually with its appropriate coverings and clothing (an unlawful search of the *person*)." *Id.* Thus for the weapon to be concealed "about [the] person" within the meaning of the statute, it must be in touch with a member of the body or in touch with clothing, coverings, or other items worn about the body. It must be so connected with the body as to be ready and handy whenever the possessor desires to use it. If the weapon is located where the possessor is likely to lose control or ready access to it by inadvertence or accident, it is not "about his person." The weapon must be carried as arms and not as a commodity.

If the legislative intent had been otherwise and the General Assembly meant to prohibit carrying a weapon concealed, for example, in a handbag or in a basket or in a saddlebag, then the second reference to "person" would have been omitted as being unnecessary. The statute would have then read: "If any person carry, hid from common observation, any pistol. . . ." Under such a provision, the statute would have been violated whether or not the gun was connected with the person as long as it was carried and hidden from common observation.

Consequently, under a strict construction of § 18.2-308, I would hold that the conduct here of carrying a handbag in which was concealed a pistol did not amount to carrying such weapon "about [her] person," within the meaning of the statute.

There is a second, equally important reason why I am unable to join my brethren in this case. As I construe the majority opinion, the interpretation of the statute articulated in *Sutherland* is frontally rejected and, to that extent, the case is summarily overruled. In my view, this amounts to judicial legislation, an exercise in which I am unwilling to engage.

Preliminarily, I do not believe the facts of *Sutherland* can be distinguished from the facts of this case, although the majority takes a different view without telling us in explicit terms how the cases can be differentiated. In *Sutherland,* the court said: "The question presented is whether or not it is a violation of the statute against carrying concealed weapons for a man to carry in his hand a pair of saddlebags containing a pistol, which is hidden from common observation." 109 Va. at 835, 65 S.E. at 15. By merely substituting "a handbag" for "a pair of saddle-bags," and by referring to a female instead of a male, the issue in this case is precisely stated and is the same as in *Sutherland*.

The statutory provisions with which we are concerned here have remained unchanged during the 70-year period since *Sutherland* was decided in 1909. Manifestly, then, over the ensuing years the General Assembly has tacitly approved the *Sutherland* construction of the statute. In addition, it is significant that within the last five years the General Assembly has changed on three occasions other provisions of the very same statute without any alteration of the substantive provisions with which we today deal, and reenacted the statute each time. *See* Acts 1979, ch. 642; Acts 1978, ch. 715; Acts 1976, ch. 302. That circumstance, I submit, buttresses the view that the General Assembly has implicitly endorsed the *Sutherland* interpretation of the statute. Consequently, the abrupt change announced today in the law of concealed weapons should come, in my view, as the result of legislative enactment and not by judicial decision.

For these reasons, I respectfully dissent.

CARRICO, J., joins in the second part of this dissenting opinion.