TACITUS ANSTATIUS HALL

v.

COMMONWEALTH OF VIRGINIA

Nos. 0963-88-1 and

0964-88-1

Decided March 20, 1990

Affirmed Upon Rehearing June 12, 1990

COUNSEL

John C. Stephens, Jr. (Stephens & Roberts, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Tacitus Anstatius Hall was convicted by jury of possession of burglar's tools in violation of Code § 18.2-94 and carrying a concealed weapon in violation of Code § 18.2-308. In this appeal, we are asked to decide whether Hall's arrest was unlawful, thereby rendering the evidence seized inadmissible, and whether Hall violated Code § 18.2-308 by carrying a handgun in a gym bag.

At approximately 11:09 p.m. on December 13, 1987, Officer Dennis Baines of the Williamsburg Police Department responded to a silent burglar alarm at the Williamsburg Drug Company, bordering the campus of the College of William and Mary. Because there were no backup units available within the department, the dispatcher radioed for assistance from the William and Mary

Police Department. Officer Greg Perry of the William and Mary Police Department responded to the call, and he and Officer Baines searched the exterior premises of the drugstore. Finding no sign of forced entry, Officer Perry left the drugstore but continued to monitor the Williamsburg Police radio frequency. Officer Baines remained at the drug store and waited for the manager to arrive, and together they examined the interior of the building. In the basement they discovered an open office door, which normally was kept closed and locked. They also observed "pry marks" on the door. They described the condition of the office as a "mess." Suspecting that an intruder was in the building, Officer Baines and the store manager went back upstairs, and Baines radioed for assistance. While waiting for assistance to arrive, Officer Baines heard a commotion and a "banging noise" in the basement. When the backup unit arrived, the officers went downstairs, where Baines discovered that the intruder had opened the back door by stripping the hinges from the wood. Officer Baines radioed that someone had broken out of the basement. Officer Jim Thompson of the William and Mary Police Department, who was patrolling the "Ancient Triangle" area of the campus within view of the drugstore, heard Officer Baines' request for assistance. Shortly therafter Officer Thompson observed a man dressed in dark clothing running from the direction of the drugstore. Thompson testified that the man ran across the campus, jumping fences and brick walls, and carried a bag which made a "jingling" sound. Officer Thompson radioed that a "suspicious person" was on campus. William and Mary Police Officers Perry, Ted Koehl, and Garnice Graham also heard Officer Baines' radio communications and Officer Thompson's report of a suspicious person on campus. Perry, Koehl and Graham all testified that they saw Hall run across campus and emerge from between two student dormitories. The officers gave chase as Hall ran across the campus and eventually off the campus grounds. Officers Perry and Graham both testified that they identified themselves as police officers and ordered Hall to stop, but to no avail. Eventually the officers tackled Hall in a grassy median of a privately owned parking area across the street from the college. A struggle ensued, during which Hall reached twice for his open gym bag. Officer Perry pushed the bag away. Hall was subdued and placed under arrest. The officers searched Hall and discovered a Lion lock blade knife. The officers then searched the gym bag, and found a cocked and loaded .38 caliber handgun, a flashlight, two ski masks, a crowbar, a screw-

driver and duct tape.

In his first issue on appeal, Hall argues that his arrest was unlawful, and, therefore, the evidence seized as a result of the illegal arrest should have been inadmissible at trial. Specifically, Hall argues that the campus police officers lacked authority to arrest him since the arrest occurred off the campus grounds.

The Commonwealth argues that Hall's arrest was lawful under the provisions of Code § 23-234, which provides in pertinent part:

[a] campus police officer . . . may exercise the powers and duties conferred by law upon police officers of cities, towns, or counties . . . (i) upon any property owned or controlled by the institution for which he was appointed and upon the streets, sidewalks, and highways, immediately adjacent thereto . . . and (iii) in close pursuit of a person as provided in § 19.2-77.

The Commonwealth argues that Hall's arrest was lawful under both subsections (i) and (iii) of Code § 23-234 since the campus police officers were in close pursuit of Hall, and because the chase began on the campus and ended directly across the street from the campus. We disagree. Code § 23-234(i) provides that campus police may arrest an individual upon campus grounds and "upon the streets, sidewalks, and highways, *immediately adjacent thereto* . . . ." (emphasis added). Hall was arrested in a grassy median area of a privately owned parking lot. While the arrest occurred directly across the street from the campus, the arrest did not occur on property owned or controlled by the college or on a street, sidewalk or highway immediately adjacent thereto. For this reason, the officers did not have authority to arrest Hall pursuant to Code § 23-234(i).

Further, the arrest was not made in close pursuit, pursuant to Code § 23-234(iii). Code § 23-234(iii) provides that campus police officers may exercise their powers and duties while in close pursuit as provided in Code § 19.2-77. Code § 19.2-77 provides, in pertinent part, that "[w]henever a person in the custody of an officer shall escape or whenever a person shall flee from an officer *attempting to arrest him*, such officer, with or without a warrant, may pursue such person . . . and, when actually in close pursuit, may arrest him wherever he is found." (emphasis added). While

the evidence established that Hall was fleeing from the officers, the officers testified that they were not "attempting to arrest him" when they pursued him. Rather, the officers testified that they were trying to apprehend Hall for purposes of questioning him. Therefore, the officers did not have authority to arrest Hall under Code § 23-234(iii).

■ The Commonwealth argues that even if the officers exceeded their statutory authority, the arrest was, nevertheless, lawful because the officers retained the power as private citizens to place Hall under arrest. Because there is no statute governing an arrest by a private citizen, we must look to the common law. "It is well recognized at common law that a private person may arrest without a warrant in a felony case if the felony has actually been committed and he has reasonable grounds for believing that the person arrested was the one who committed it." *Moore v. Oliver*, 347 F. Supp. 1313, 1316 (W.D. Va. 1972). *See also Tharp v. Commonwealth*, 221 Va. 487, 490, 270 S.E.2d 752, 754 (1980). All of the William and Mary officers involved in Hall's arrest testified that they had been monitoring the Williamsburg Police radio frequency and were aware that a breaking and entering had occurred at the Williamsburg drugstore. Further, the officers had reasonable grounds to believe that Hall was the one who had committed the felonious act. Shortly after Officer Baines radioed that someone had broken out of the basement, Officer Thompson saw a man, later identified as Hall, running across campus, jumping fences and carrying a bag which "jingled" and "clanked." Hall refused to comply with the repeated demands of Officers Perry and Graham to stop. After the officers apprehended Hall, he continued to struggle and reach for his gym bag containing the loaded handgun. In light of these circumstances, the officers had reason to believe Hall was involved in the breaking and entering of the drugstore and, as private citizens, place him under arrest.

Further, the items seized were properly admitted into evidence. During the struggle between the officers and Hall, Hall repeatedly attempted to reach for his open gym bag. It was reasonable under those circumstances for the officers to believe that the gym bag contained a weapon or some instrument which Hall sought to obtain to assault the officers or to effect an escape. Under these circumstances, the officers had the right to search the gym bag incident to their lawful arrest of Hall. *Chimel v. California*, 395 U.S.

752, 763 (1969). The evidence obtained by that search was properly admitted.

Hall next argues that carrying a handgun in a gym bag does not violate Code § 18.2-308, which makes it a Class 1 misdemeanor for any person to carry "about his person, hidden from common observations, (i) any pistol . . . ." In *Schaaf v. Commonwealth*, 220 Va. 429, 431, 258 S.E.2d 574, 575 (1979), our Supreme Court held that a pistol carried in a handbag is so "near and about the carrier's person, hidden from common observation," and so readily accessible, that such action constitutes a violation of Code § 18.2-308. Officer Graham testified that Hall was carrying the gym bag tucked under his right arm. Hall was carrying the gym bag in such a manner that it was close and about his person, giving him ready access to the bag and its contents. Therefore, because we find no discernible distinction between carrying a gun in a handbag and carrying a gun in a gym bag being carried close and about the person, we find that Hall violated Code § 18.2-308.

For the foregoing reasons, we affirm.

*Affirmed.*

Baker, J., and Coleman, J., concurred.