UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.                                          No. 00-4779

ERIC ATKINS,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-00-279)

Argued: May 10, 2001

Decided: July 31, 2001

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Stephen Wiley Miller, OFFICE OF THE UNITED
STATES ATTORNEY, Richmond, Virginia, for Appellant. Isaac
Scott Pickus, JACKSON, PICKUS & ASSOCIATES, P.C., Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, David Lassiter, Jr., Special United States Attorney,
Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Pursuant to 18 U.S.C.A. § 3731 (West 2000), the Government appeals a decision of the district court suppressing a handgun and other evidence seized by police in connection with the arrest of Eric Atkins. We reverse and remand for further proceedings.

### I.

Around midnight on June 15, 2000, four Richmond police officers were riding in a marked patrol car in an area of town known for its drug traffic. The officers observed a white Cadillac drive by and discovered the car was registered to Tiny Porter, a suspected drug dealer. Atkins was driving and a man later identified as Queen sat in the passenger seat.

Atkins parked the Cadillac at a street corner and remained inside the car with Queen. The marked patrol car stopped nearby, and two of the officers, Detectives John O'Connor and Michael Musselwhite, approached the car on foot. As Detectives O'Connor and Michael neared the vehicle, Atkins pulled away, drove approximately 200 feet down the street, and parked again. Atkins and Queen got out of the car, and began walking toward an apartment building. According to Atkins, he locked the doors to the vehicle when he got out. Detectives O'Connor and Musselwhite, still on foot, reached Atkins and Queen when they were ten or fifteen feet away from the car. Atkins and Queen consented to speak with the officers.

While Atkins and Queen were talking to Detectives O'Connor and Musselwhite, the two remaining officers, Lieutenant Michael Shamus and Sergeant John O'Kleasky, approached the Cadillac and looked through the windows. With the aid of a flashlight, Lieutenant Shamus and Sergeant O'Kleasky noticed a portion of a handgun on the floor-

board of the car, protruding from underneath the passenger's seat. Sergeant O'Kleasky testified that "a firearm . . . was sticking out from underneath the passenger seat of that vehicle. Obviously the interior was dark, it was nighttime. I had to illuminate the interior with my flashlight, looked down under the seat," J.A. 67-68, and observed that "[p]art was sticking out from under the seat." J.A. 68. Sergeant O'Kleasky stated that it was readily apparent that the object sticking out from under the passenger's seat was a handgun.

At that point, Sergeant O'Kleasky used a non-verbal signal to alert Detective O'Connor that O'Kleasky intended to handcuff Queen and that O'Connor should be prepared to handcuff Atkins. Sergeant O'Kleasky then placed handcuffs on Queen, and Detective O'Connor handcuffed Atkins. After he handcuffed Queen, O'Kleasky asked Queen whether he was a convicted felon and Queen answered affirmatively. O'Kleasky and O'Connor testified that Queen was placed under arrest only after he acknowledged his felony status.

The Cadillac was then searched following the arrest of Queen. Atkins testified that the officers took the keys from his jacket pocket without his permission when he was handcuffed. The officers located a second firearm completely hidden underneath the driver's seat. Atkins and Queen denied knowledge that the weapons were in the Cadillac. Atkins, still in handcuffs, was placed under arrest and searched. The search of Atkins' person yielded cocaine base, marijuana, $3,000 in cash, a pager, and a cellular telephone.

Atkins was indicted on two possession charges, two charges of possession with intent to distribute, and one charge of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.A. § 924(c). Additionally, the Government sought the forfeiture of the approximately $3,000 in cash.

Atkins moved to suppress all of the items seized from Atkins and the Cadillac during the officers' search. The district court found as a fact that Queen was arrested before he revealed that he was a convicted felon. Thus, the district court concluded that there was no probable cause to arrest Queen and that any evidence seized during the search of the Cadillac after Queen's arrest had to be suppressed. Moreover, the district court concluded that the officers did not have

probable cause to arrest Atkins or even reasonable suspicion to detain him under *Terry v. Ohio*, 392 U.S. 1 (1968). Accordingly, the district court determined that the search of Atkins's person was impermissible and suppressed all of the evidence recovered from that search as well.

II.

A.

The Government contends that the officers had probable cause to arrest Queen and Atkins as a result of the partially concealed firearm under the passenger seat of the Cadillac. Virginia law provides that "[i]f any person carries about his person, hidden from common observation, . . . any pistol, revolver, or other weapon . . . he shall be guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-308(A). A weapon is carried "about the person" if "it is so connected with the person as to be readily accessible for use or surprise if desired." *Schaaf v. Commonwealth*, 258 S.E.2d 574, 575 (Va. 1979). A pistol that is transported in a locked console or under the floormat of a car qualifies as one that is carried about the person. *See Leith v. Commonwealth*, 440 S.E.2d 152, 153-54 (Va. Ct. App. 1994); *Watson v. Commonwealth*, 435 S.E.2d 428, 429-30 (Va. Ct. App. 1993).

Atkins argues that the officers could not have had probable cause under § 18.2-308(A) of the Virginia Code because the weapon was not concealed. In support, Atkins relies primarily on the statement of Sergeant O'Kleasky that the portion of the weapon protruding from under the passenger's seat was "in plain view" such that the nature of the object was readily apparent to the officers. Indeed, as Atkins points out, openly carrying a firearm is not illegal *per se* in Virginia. *See Christian v. Commonwealth*, 536 S.E.2d 477, 484 (Va. Ct. App. 2000) (en banc) (Benton, J., dissenting) ("[I]f a person desires to transport a firearm from his automobile to his residence, the firearm *must* be openly displayed.").

Here, however, the weapon observed by the officers was not openly displayed. Rather, only a portion of the firearm was visible from under the passenger's seat, *i.e.*, only part of the handgun was "in plain view." The statute requires that the weapon be "hidden from

common observation." Va. Code Ann. § 18.2-308(A). A firearm is hidden from common observation if it is "hidden from all except those with an unusual or exceptional opportunity to view it." *Main v. Commonwealth*, 457 S.E.2d 400, 402 (Va. Ct. App. 1995) (en banc). That O'Kleasky was positioned so that he saw part of the weapon protruding from underneath the seat did not make the firearm exposed to common observation.

We agree with the Government that the facts in this case amounted to probable cause to arrest Queen and Atkins for violating Va. Code Ann. § 18.2-308(A). The probable cause requirement for a warrantless arrest is satisfied when there are "'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (en banc) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *Id.* Under the circumstances of this case, an officer could have reasonably believed that Atkins, who was driving and exercising control over the Cadillac, or Queen, who was sitting in the front passenger's seat, was carrying a concealed weapon in violation of Virginia law. The weapon protruding from under the front passenger seat was not visible except to those who, like Sergeant O'Kleasky, had an exceptional opportunity to view it.

In concluding that the partially obscured handgun gave the officers probable cause to arrest Atkins and Queen, we are persuaded by the reasoning of the Ninth Circuit Court of Appeals in *United States v. Thornton*, 710 F.2d 513 (9th Cir. 1983). *Thornton* held that an officer had probable cause to arrest the driver of a vehicle for violating an Idaho concealed weapons law when the officer observed eight inches of the stock of a sawed-off shotgun jutting from under the front seat. *See id.* at 514-15. As in Virginia, a weapon qualified as concealed under Idaho law "if not discernable by ordinary observation." *Id.* at 515. The Ninth Circuit found that "[a]n officer . . . reasonably could conclude that a gun carried with only its stock visible was in violation of [the concealed weapon law]." *Id.*

We, too, conclude that the officers could reasonably believe that a firearm resting partially underneath the front seat of an automobile constituted a violation of Virginia's concealed weapon law. Thus, we hold that there was probable cause to arrest Atkins and Queen for violating Va. Code Ann. § 18.2-308(A).

B.

The Government contends that because the officers had probable cause to arrest Queen and Atkins, they were also within their authority to search the vehicle incident to that arrest. *See New York v. Belton*, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."); *see also United States v. McCraw*, 920 F.2d 224, 228 (4th Cir. 1990) ("Incident to an automobile occupant's lawful arrest, police may search the passenger compartment of the vehicle and examine the contents of any containers found within the passenger compartment."). "A search incident to an arrest may not stray beyond the area within the immediate control of the arrestee," *Belton*, 453 U.S. at 460, because this exception to the warrant requirement is based on "the need to remove any weapons that [the arrestee] might seek to use in order to resist arrest . . . and the need to prevent the concealment or destruction of evidence," *id.* at 457 (internal quotation marks omitted) (alteration in original).

Even if the passenger compartment of the Cadillac was not within the "immediate control" of Atkins and Queen at the time of the arrest — given that they had vacated the automobile, locked it, and walked at least ten feet before they encountered the officers — the search was nevertheless valid under the automobile exception to the warrant requirement. The partially obscured handgun supplied the officers not only with probable cause to arrest Atkins and Queen but also "probable cause to believe contraband or evidence" of criminal activity was contained in the passenger compartment of the automobile. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

Moreover, the search of Atkins' person incident to his arrest was permissible. *See Belton*, 453 U.S. at 457 ("[A] lawful custodial arrest creates a situation which justifies the contemporaneous search without

a warrant of the person arrested and of the immediately surrounding area."); *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). The fact that Atkins was not formally arrested before the officers took his keys from him and searched the vehicle does not invalidate the search. A search incident to arrest may precede the formal arrest, provided that "the formal arrest quickly follows the challenged search" and there is probable cause to arrest at the time of the search. *United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991).

### III.

For the foregoing reasons, we reverse the decision below and remand for further proceedings.

*REVERSED AND REMANDED*