PRESENT: All the Justices

DORAIN JEROD MYERS

OPINION BY
v. Record No. 200165                                    JUSTICE D. ARTHUR KELSEY
                                                        MAY 13, 2021

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Following a bench trial, the trial court found appellant Dorain Jerod Myers guilty of

carrying a concealed weapon, second offense, in violation of Code § 18.2-308. Myers appealed to

the Court of Appeals, challenging the sufficiency of the evidence and the trial court's failure to

apply the statutory exception to criminal liability recognized in Code § 18.2-308(C)(8). The Court

of Appeals affirmed the trial court on both issues. We conclude that the statutory exception

applies and reverse Myers's conviction on this ground.

I.

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)

(citation omitted). So viewed, the record shows that Officers Ashley Shockley and Hunter Triplett

were patrolling an apartment complex and observed a parked Ford Expedition SUV occupied by

three people. The officers approached the vehicle to investigate since they had responded to a

breaking and entering at the apartment complex the previous evening. When they approached the

vehicle, Officer Shockley detected the odor of marijuana emanating from one of the vehicle's

open windows. Myers was in the driver's seat, a male was in the front passenger's seat, and a

female was in the back seat. The officers ordered everyone out of the vehicle to search it.

The officers found a BB handgun in the pocket of the driver's door and a blue backpack on

the front passenger's floorboard "just at arm's reach over" from the driver's seat, J.A. at 26. The

backpack was sitting upright immediately in front of the center of the front passenger's seat and facing outward with the backpack straps touching the seat. The front pocket of the backpack was unzipped, but the back pocket, which was closest to the seat, was zipped completely shut. Officer Shockley unzipped the back pocket "with ease" and handed the backpack to Officer Triplett to search. *Id.* at 25, 37. Officer Triplett found two more BB guns and a .40 caliber handgun in the back pocket of the backpack. In the center console of the vehicle, Officer Shockley also found a wallet that contained an identification card for Myers and a .40 caliber cartridge matching the cartridges in the handgun's magazine.

Officer Shockley asked who owned the backpack, and at first, none of the vehicle's occupants answered. After the officer had informed the occupants that a concealed weapon was in the backpack and had asked whether she should charge all of them or one of them with carrying it, Myers claimed ownership of the handgun. Myers also acknowledged ownership of the .40 caliber cartridge found in the wallet. The officers arrested Myers after they had discovered that he had a prior conviction for carrying a concealed weapon without a permit.

Myers was indicted for carrying a concealed weapon, second offense, in violation of Code § 18.2-308, and tried in a bench trial. At the conclusion of the evidence, Myers moved to strike the Commonwealth's evidence, claiming that no facts proved that the concealed handgun had been "about his person" as required by Code § 18.2-308(A). Myers also argued that the undisputed facts showed that the handgun had been secured in a container in the vehicle pursuant to the statutory exception recognized in Code § 18.2-308(C)(8). The trial court denied the motion to strike on both grounds and found Myers guilty of carrying a concealed weapon, second offense. The Court of Appeals affirmed both holdings of the trial court. *See Myers v. Commonwealth*, Record No. 1978-18-1, 2019 WL 7196647, at *4 (Va. Ct. App. Dec. 27, 2019) (unpublished).

II.

On appeal to this Court, Myers contends that he was not carrying a concealed weapon "about his person" in violation of Code § 18.2-308(A), and that even if he had been, the statutory exception to criminal liability recognized by Code § 18.2-308(C)(8) applies to the undisputed facts of this case. We agree with his second argument and reverse on that ground.

A.

Code § 18.2-308(A) makes it illegal for any person (except those expressly exempted) to "carr[y] about his person" certain weapons, including firearms, in a manner that is "hidden from common observation." In an early opinion interpreting a former version of this statute, we explained: "'About the person' must mean that it is so connected with the person as to be readily accessible for use or surprise if desired." *Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909). Strictly applying this definition, we held that a man carrying "[a] pistol in a scabbard [a type of holster] and in a pair of saddlebags, with the lids down, though the saddlebags be in the hand" had not been carrying a firearm "about his person." *Id.* at 835-36. A coda at the end of the opinion stated: "If the statute be less comprehensive than the Legislature intended, it is for that body to extend its operation, and not for the courts to do so." *Id.* at 836.

Seventy years later, in *Schaaf v. Commonwealth*, we revisited the meaning of "carry about his person" despite the fact that the "concealed weapon statute ha[d] remained essentially unchanged" since *Sutherland*. 220 Va. 429, 430 (1979). In *Schaaf*, this Court held that a woman had violated the concealed-weapon statute by carrying a zippered handbag containing a handgun. *Id.* at 432. Attempting to distinguish *Sutherland*, we suggested that there were "obvious differences between the accessibility of a gun in a lady's handbag and a gun encased in a scabbard and carried in a saddlebag with the lid down." *Id.* at 431. "A gun in a saddlebag," we

3

acknowledged, was "not readily accessible," but "[a] gun in a shoulder bag or a large handbag is accessible." *Id.* Perhaps wincing a bit from this scant distinction, we concluded simply: "While *Sutherland* can be distinguished from this case on the facts, to the extent that there may be a conflict *Sutherland* is overruled." *Id.* at 432.

Since then, in various contexts, this Court and the Court of Appeals have interpreted *Schaaf*'s "carry about his person" analysis as applying to any hidden firearm within arm's reach of the person — whether or not the person physically carried the firearm.[1] Myers argues that we should again revisit the meaning of the phrase "carries about his person" in Code § 18.2-308(A) and limit its reach to the narrow holding of *Schaaf*, which adopted the rule that "the carrying of a weapon in a handbag or other similar article, *held in the hand or placed under the arm*, constitutes concealment of a weapon on or about the person," 220 Va. at 432 (emphasis added). Myers also argues that, even if we were not to go that far, we should still reverse under existing precedent because a handgun in a fully closed, zipped backpack on the front passenger's floorboard of a vehicle is not on or "about the person" of the driver.

### B.

Perhaps the time will come for us to reconsider the reach of *Schaaf* or to recalibrate its application, but this is not the case in which to do so. Code § 18.2-308(C)(8) provides an exception to Code § 18.2-308(A)'s prohibition on carrying a concealed weapon for "[a]ny person who may lawfully possess a firearm and is carrying a handgun while in a personal, private motor

---

[1] *See, e.g.*, *Pruitt v. Commonwealth*, 274 Va. 382, 387-89 (2007); *Atkins v. Commonwealth*, 57 Va. App. 2, 25 (2010); *Hunter v. Commonwealth*, 56 Va. App. 50, 64-66 (2010); *Leith v. Commonwealth*, 17 Va. App. 620, 623 (1994); *Watson v. Commonwealth*, 17 Va. App. 124, 125, 127 (1993); *Hall v. Commonwealth*, 12 Va. App. 559, 564 (1990).

4

vehicle or vessel and such handgun is secured in a container or compartment in the vehicle or vessel." This statutory exception applies to this case.

1.

Subsections B, C, and D of Code § 18.2-308 include fact-specific exceptions to the general rule of criminal liability for carrying a concealed weapon under subsection A. These provisions are not "negative" elements of the Commonwealth's prima facie case. *See generally* 1 Wayne R. LaFave, Substantive Criminal Law § 1.8(c), at 107-10 (3d ed. 2018). An exception renders a generality inapplicable, not inaccurate. Put another way, the elements of a statutory crime assert a thesis of guilt. A statutory exception is not its antithesis. Consider, for example, a charge of intentional homicide that is negated by proof that the killing was accidental. The Commonwealth's burden of proving an intentional homicide necessarily requires it to disprove any reasonable doubt that the killing was an accident. On the other hand, "[s]elf-defense in Virginia is an affirmative defense, the absence of which is not an element of murder," and in pleading self-defense, "a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978).

Code § 18.2-308(A) states the prima facie elements of the crime of carrying a concealed weapon. Subsections B, C, and D serve as exceptions — affirmative defenses — to the subsection A crime. Addressing the exception in subsection B, which applies to concealed weapons in one's home or its curtilage, the Court of Appeals has correctly observed that

> subsection (B) is not essential to complete the general prohibition against carrying concealed weapons without a permit. In fact, "requiring the Commonwealth to prove this negative would undermine the general prohibition intended by the legislature" because the Commonwealth would be required to prove in the negative *all* the exceptions provided for in subsections (B)-(D).

5

*Foley v. Commonwealth*, 63 Va. App. 186, 200-01 (2014) (emphasis in original) (citation omitted).[2]  We agree.  Not one of the exceptions in subsections B, C, or D serves as a negative element of the subsection A crime.  Instead, these exceptions list affirmative defenses that a defendant must either raise or waive.  As is true with many — but not all — affirmative defenses in criminal cases,[3] the defendant must shoulder only a burden of production on a subsection C defense.  This burden requires the defendant to present more than a scintilla of evidence (either from his own case-in-chief or from the prosecution's) that if believed by the factfinder, could create a reasonable doubt as to the defendant's guilt.  *See generally* John L. Costello, Virginia Criminal Law and Procedure § 60.4[3], at 1007-08 (4th ed. 2008).  If the defendant presents such evidence, the Commonwealth must then shoulder its burden of persuasion — requiring proof sufficient under the reasonable-doubt standard to permit a rational factfinder to reject the defense and to find the defendant guilty.  *See, e.g.*, *Simopoulos v. Commonwealth*, 221 Va. 1059, 1068-69 (1981), *aff'd*, 462 U.S. 506 (1983); *Hodges v. Commonwealth*, 64 Va. App. 687, 697-98 (2015).

---

[2] We respectfully disagree with the statements in *Hodges v. Commonwealth* that fail to recognize all the exceptions in subsections B and C as affirmative defenses.  *See* 64 Va. App. 687, 697-99 (2015).  As we explain later, however, we agree with the conclusion of the Court of Appeals in *Hodges* that the Commonwealth has the ultimate burden of persuasion in the event that the defendant raises one of these statutory exceptions and satisfies his burden of production with more than a scintilla of evidence.  *See infra* at 6.

[3] S*ee, e.g.*, Code §§ 18.2-85, -263, -357, -364; *cf. Stillwell v. Commonwealth*, 219 Va. 214, 225-26 (1978) (requiring a defendant accused of drug distribution to establish an "accommodation defense" that mitigates his punishment by proving such accommodation "by a preponderance of the evidence"); *Taylor v. Commonwealth*, 208 Va. 316, 322 (1967) (stating that "when insanity is relied upon as a defense in a criminal prosecution, it must be proved by the defendant to the satisfaction of the jury" but that the "ultimate burden of proof which rests upon the Commonwealth to prove the commission of the alleged offense beyond a reasonable doubt" does not shift).  *See generally Patterson v. New York*, 432 U.S. 197, 210 (1977) (declining "to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused").

2.

Myers relies upon subsection C(8), which carves an exception to criminal liability out of the general scope of subsection A for any "person who may lawfully possess a firearm and is carrying a handgun while in a personal, private motor vehicle or vessel and such handgun is secured in a container or compartment in the vehicle or vessel."[4]  The parties do not dispute that Myers was a person who could lawfully possess a firearm, that the firearm in question was a "handgun," and that the handgun was contained in a backpack qualifying as a "container" in a "personal, private vehicle," Code § 18.2-308(C)(8).  The dispute is entirely over the question whether the handgun was "secured" in that backpack, *id.*, and is a mixed question of fact and law.  The facts of this case are undisputed.  The trial court, sitting as factfinder, and the parties all agree that Myers concealed the handgun in a backpack that had been fully zipped.  The law, therefore, is the only dispute.  That question requires us to determine if the General Assembly intended the statutory exception in Code § 18.2-308(C)(8) to apply to a fully zipped backpack.

To understand what the General Assembly meant by the word "secured" in Code § 18.2-308(C)(8), we would ordinarily assess the linguistic range of this statutorily undefined word in "plain, ordinary language," *Caldwell v. Commonwealth*, 298 Va. 517, 525 (2020).  As the Court of Appeals has observed, however, in ordinary usage "[t]he term 'secured' can have several different meanings." *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (2013).  When a statutory term is ambiguous, we resort to the rules of statutory construction, including the legislative history of

---

[4] As the Court of Appeals has pointed out, however, this "exception is subject to an exception" because "[a] person may not avail himself of the protection of" the motor-vehicle exception "if he is engaging in the prohibited conduct delineated in Code § 18.2-308.012(A)," such as, inter alia, driving while intoxicated. *Hodges*, 64 Va. App. at 694 n.2.

7

the statute. *See Virginia-Am. Water Co. v. Prince William Cnty. Serv. Auth.*, 246 Va. 509, 514 (1993).

The legislative history of subsection C(8) does not make clear exactly what the word "secured" means, but it does clarify what the word does not mean. When the General Assembly first passed the former version of subsection C(8) in 2010, the enrolled House Bill 885 that was presented to the Governor required the handgun to be "locked in a container or compartment" within the vehicle. *Doulgerakis*, 61 Va. App. at 420 (quoting H.B. 885, Va. Gen. Assem. (Reg. Sess. 2010) (as passed by the General Assembly, March 22, 2010)). Exercising his authority under Article V, Section 6 of the Constitution of Virginia, the Governor sent the bill back to the legislature with the recommendation to substitute "locked" with "secured." *See* 2 Journal of the House of Delegates of the Commonwealth of Virginia 1658-59 (2010). The General Assembly agreed, made the recommended substitution, and enacted subsection C(8) in its present form. *See* 2010 Acts ch. 841, at 1792 (codified as amended at Code § 18.2-308(C)(8)).

We agree with the Court of Appeals that, "[i]n accepting the Governor's proposed change, the legislature made it clear that in this amendment, 'secured' does not mean 'locked.'" *Doulgerakis*, 61 Va. App. at 421. The word "locked" is a lesser-included concept within the meaning of the broader word "secured." It necessarily follows that a weapon in a locked container will be secured, but a secured weapon need not be in a locked container. We also agree with the Court of Appeals that "'secured' is not synonymous with 'closed'" because "[t]o fall within the exception, the container within the vehicle must not only be closed, but also must be latched or otherwise fastened." *Hodges*, 64 Va. App. at 695.

The latched-or-fastened standard adopted by the Court of Appeals is consistent with most dictionary definitions of "secure" or "secured." *See, e.g.*, 2 Samuel Johnson, A Dictionary of the

8

English Language (1756) (defining "[t]o secure" as "[t]o make fast" (altering archaic spelling)); 2 Noah Webster, An American Dictionary of the English Language (1828) (defining "[s]ecured" as "made fast"); Webster's New International Dictionary of the English Language 1911 (W.T. Harris & F. Sturges Allen eds., 1930) (defining "secure" as "[i]n safe keeping or possession; secured," "[t]o make fast; to close or confine effectually," or "[t]o be fastened or secured"); The American Heritage Dictionary 1109 (2d College ed. 1985) (defining "secure" as "[w]ell-fastened" or "[n]ot likely to fail or give way; stable"); Webster's Third New International Dictionary 2053 (Philip Babcock Gove ed., 2002) (defining "secure" as "to make fast" or "tie down").

Within this range of dictionary definitions, the Court of Appeals correctly observed that a handgun can be securely placed in a latched gun case. *See Myers*, 2019 WL 7196647, at *3 (noting specifically a "carrying case for a firearm"). The same is true, the Court of Appeals has held, if a handgun is simply placed in a latched console or glove box. *See Hodges*, 64 Va. App. at 695; *Doulgerakis*, 61 Va. App. at 421. In this case, however, the Commonwealth argues that the same cannot be true of a handgun contained in a zipped backpack because the backpack could be "opened 'with ease.'" Appellee's Br. at 12 (citation omitted). The Court of Appeals found this distinction convincing. We do not. A console is immediately to the right of the driver, often directly beneath the driver's arm. The glove box is also within arm's reach. And a gun case could be laying on the driver's lap. The second or two that it would take to open a latch on a console, glove box, or gun case is no different from the second or two that it would take to open a fully zipped backpack. Truth be told, Myers's handgun was no less "secured" in his zipped backpack than it would have been in a latched gun case. If neither is locked, each could be easily opened.

That reality leads us to an inescapable conclusion: If "secured" in Code § 18.2-308(C)(8) does not mean locked but does mean latched or well-fastened, the ordinary way that one *fastens* a

9

backpack is to fully zip its opening so that no one can reach inside.  To hold otherwise is to say that handguns transported in vehicles can be secured in unlocked plastic boxes with plastic latches (such as consoles, glove boxes, and plastic gun cases) but can never, as a matter of law, be secured in unlocked bags with zippers (such as backpacks or specially designed canvas gun cases).

Given the undisputed facts of this case, we hold that Myers was entitled to the protection of subsection C(8)'s exception to criminal liability for carrying a concealed weapon because the handgun was secured in a container within his personal, private vehicle.  The ordinary meaning of "secured" (when it is not considered an exact synonym of "locked") includes a fully latched rigid container as well as a fully zipped soft container, such as one made of cloth, canvas, or leather.

## III.

In sum, the Court of Appeals erred in affirming Myers's conviction for violating Code § 18.2-308(A).  He lawfully possessed the handgun secured in a backpack in his personal, private vehicle.  We thus enter final judgment reversing his conviction and dismissing the indictment.

*Reversed and final judgment*.