PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Mann, JJ., and Mims, S.J.

WILLIAM JOSEPH MORGAN, III

                                           OPINION BY

v.  Record No. 211033                     JUSTICE CLEO E. POWELL
                                          DECEMBER 29, 2022

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

William Joseph Morgan, III ("Morgan") appeals the decision of the Court of Appeals of Virginia affirming his conviction for carrying a concealed weapon while intoxicated in violation of Code § 18.2-308.012.

## I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Myers v. Commonwealth*, 299 Va. 671, 674 (2021) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236, 781 S.E.2d 920 (2016)).  So viewed, the record demonstrates that on March 6, 2019, a white Ford Crown Victoria was seen driving "erratically." A police officer in a marked patrol unit performed a traffic stop of the vehicle. During the traffic stop, the driver, later identified as Morgan, informed the officer that a gun was next to him in a zipped bag on his front passenger seat.  The officer detained Morgan and then located the zipped bag, which contained a holstered handgun. Morgan subsequently provided the officer with his concealed weapons permit. After smelling alcohol on Morgan and performing a preliminary breath test, the officer placed Morgan under arrest for driving under the influence.

Morgan was charged and convicted in the general district court for carrying a concealed weapon while intoxicated, driving under the influence, and impersonating a police officer.  He appealed all but the driving under the influence charge to the circuit court. Following a bench trial, the circuit court found him guilty of all charges.

Morgan appealed his convictions to the Court of Appeals arguing, *inter alia*, that Code § 18.2-308.012 requires a finding that the gun was carried about his person. He further argued that his gun was neither carried on his person nor was it immediately accessible and, therefore, his conviction was in error. The Court of Appeals affirmed Morgan's convictions. In a footnote, the Court of Appeals stated that "the trial court need not have found that the firearm was about appellant's person because[,] unlike Code § 18.2-308(A), Code § 18.2-308.012 does not contain an 'about the person' element." *Morgan v. Commonwealth*, 73 Va. App. 512, 535 n.13 (2021).

Morgan appeals.

## II. ANALYSIS

On appeal, Morgan takes the position that a conviction under Code § 18.2-308.012 requires that the firearm be carried about the person and hidden from common observation. He contends that on the facts of the present case the handgun was neither carried nor about his person because it was in a zipped bag on the passenger seat of his vehicle. Conversely, the Commonwealth asserts that Code § 18.2-308.012 does not require a finding that the handgun be "about the person" because the language is omitted from the statute. Furthermore, the Commonwealth contends that Morgan carried the handgun because the term "carry" within the statute should be broadly construed to include transporting and conveying from one place to another.[1]

---

[1] On brief, the Commonwealth correctly states that Morgan never explicitly raised the argument that his gun was not "carried" in the Court of Appeals. However, Morgan generally argued in the Court of Appeals that "about his person" is a necessary element of carrying a concealed weapon while intoxicated. Moreover, on brief to the Court of Appeals, Morgan also contended that the gun was not carried on his person. The phrase "about his person" as used in Code § 18.2-308(A) modifies "carry," and as will be explained, "carrying" within Code § 18.2-308.012 is a narrower concept that is distinct yet subsumed within the phrase "carry about his person." Accordingly, Morgan's argument was sufficient to preserve this issue for our consideration.

The question before this Court requires interpretation of Code § 18.2-308.012, which we review *de novo*. *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194 (2012). When interpreting statutes, we must "'ascertain and give effect to the intention' of the General Assembly." *Farhoumand v. Commonwealth*, 288 Va. 338, 343 (2014) (citation omitted).

Code §§ 18.2-308 and -308.012 are parts of the same statutory scheme involving concealed weapons; thus, it is beneficial to our analysis to address the interplay between them to glean the underlying legislative intent. Code § 18.2-308(A) provides, in relevant part, that "[i]f any person carries about his person, hidden from common observation, (i) any pistol, revolver, or other weapon . . . he is guilty of a Class 1 misdemeanor." Conversely, Code § 18.2-308.012 states, in relevant part, that "[a]ny person permitted to carry a concealed handgun who is under the influence of alcohol or illegal drugs while carrying such handgun in a public place is guilty of a Class 1 misdemeanor."[2]

Generally, statutes with a common purpose or in the same general plan are considered as *in pari materia*. *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957). When considering statutes as *in pari materia*, they should not be analyzed as isolated fragments of law. *Id.* Instead, the

> statutes are considered as if they constituted but one act, so that sections of one act may be considered as though they were parts of the other act, as far as this can reasonably be done . . . where legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, and they should be so construed as to

---

[2] The Court of Appeals noted that Morgan's "private" vehicle may not be a public place as required by Code § 18.2-308.012. However, Morgan did not raise this issue at trial or on appeal; thus, this Court may not consider it. *See* Rule 5:25.

3

> harmonize the general tenor or purport of the system and make the
> scheme consistent in all its parts and uniform in its operation,
> unless a different purpose is shown plainly or with irresistible
> clearness.

*Id.* at 405 (citation and internal quotation marks omitted).

Furthermore, "when the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [the Court] must presume that the difference in the choice of language was intentional." *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); *accord Rives v. Commonwealth*, 284 Va. 1, 3 (2012). Courts must rely on this presumption "because under these circumstances, it is evident that the General Assembly 'knows how' to include such language in a statute to achieve an intended objective," and therefore, omission of such language in another statute "represents an unambiguous manifestation of a contrary intention." *Brown v. Commonwealth*, 284 Va. 538, 545 (2012) (quoting *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004)).

In analyzing the two code sections involved here, we note that the phrase "about his person" found in Code § 18.2-308(A) is conspicuously omitted from Code § 18.2-308.012. The omission of this language is telling as it indicates that the General Assembly did not intend for the two statutes to mean the same thing. Thus, Code § 18.2-308.012 must be interpreted to require evidence that the firearm was carried by Morgan and not just about his person. Having determined that "carry" is the operative word, it is therefore necessary to determine the meaning of "carry" in the context of Code § 18.2-308.012.

We are bound by the plain language of the statute "'unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Baker v. Commonwealth*, 284 Va. 572, 576 (2012) (citation omitted). "A statute is considered ambiguous if the text can be

4

understood in more than one way or refers to two or more things simultaneously or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Id.* (citation and internal quotation marks omitted).

In the context of Code § 18.2-308.012, the word "carry" can be interpreted multiple ways. As the Commonwealth argues, the plain meaning of "carry" could include mere conveyance or transporting. *See* Black's Law Dictionary 265 (11th ed. 2019) ("carry" means "[t]o convey or transport"). However, consistent with Morgan's position, the same term could reasonably be limited to physically holding an item on one's person. *See* Webster's Third New International Dictionary 343 (1993) ("carry" means "to hold, wear, or have upon one's person"). As Code § 18.2-308.012 could quite reasonably be interpreted as incorporating either one of these definitions, and the application of either interpretation invariably leads us to a drastically different outcome, the statute is ambiguous. *See Blake v. Commonwealth*, 288 Va. 375, 382 (2014).

In determining which definition of "carry" to apply in this case, we cannot overlook the fact that Code § 18.2-308.012 is a penal statute and, therefore, the rule of lenity applies.

> [I]t is an ancient maxim of the law that all such statutes must be construed strictly against the state and favorably to the liberty of the citizen. The maxim is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the Legislature, and not in the judicial department. No man incurs a penalty unless the act which subjects him to it is clearly within the spirit and letter of the statute which imposes such penalty. There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute. If these principles are violated, the fate of the accused is determined by the arbitrary discretion of the judges, and not by the express authority of the law.

*Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909) (citations omitted). The rule of lenity does not apply when it "would conflict with the implied or expressed intent of [the legislature],"

5

*Kohl's Dep't Stores, Inc. v. Va. Dep't of Taxation*, 295 Va. 177, 188 n.8 (2018) (citation and internal quotation marks omitted), nor when it would be an overly "restrictive interpretation of the statute." *McGinnis v. Commonwealth*, 296 Va. 489, 504 (2018). Neither of those exceptions applies here. Accordingly, the application of the rule of lenity, in this case, requires us to use the narrower definition of the word "carry."

It is further worth noting that a narrow definition of "carry" in this context is supported by our jurisprudence. In *Sutherland*, we construed the phrase carry (a weapon) "about his person" and held that it meant "that it is so connected with the person as to be readily accessible for use or surprise if desired." 109 Va. at 835. With that definition in mind, we held that a pistol encased in a scabbard concealed within a saddlebag, which, in turn, was carried by the defendant was not "about his person." *Id.* at 836.

Seventy years later in *Schaaf v. Commonwealth*, we further refined the phrase and held that a pistol carried in a handbag was near and about the defendant's person so as to constitute a violation of the statute. 220 Va. 429, 431 (1979). Although the crux of our analysis in that decision focused on whether the handgun was about the defendant's person, we noted that our decision aligned with a majority of other jurisdictions which have concluded that "the carrying of a weapon in a handbag or other similar article, held in the hand or placed under the arm, constitutes concealment of a weapon *on* or about the person." [3] *Id.* at 432 (emphasis added).

Just last year we decided *Myers*, in which we stated that since *Schaaf*, "this Court and the Court of Appeals have interpreted *Schaaf's* 'carry about his person' analysis as applying to any hidden firearm within arm's reach of the person — whether or not the person physically carried

---

[3] We also held that *Sutherland* could be "distinguished from this case on the facts, [but] to the extent that there may be a conflict *Sutherland* is overruled." *Id.* at 575.

the firearm." 299 Va. at 677. Inherent in this analysis is the notion that the phrase "carry about his person" is distinct from and broader than "carry" or "carry on" the person. Thus, the inclusion of the language "about his person" serves as an extension principle, which modifies "carry" and expands its definitional scope. By omitting the phrase "about his person" in Code § 18.2-308.012, the General Assembly appears to have intended to narrow the scope of the statute to apply only when physically carrying a handgun on one's person.

This interpretation is consistent with the authority on which we relied in *Schaaf*, highlighting this Court's accordance with other jurisdictions. *See, e.g.,* W.M. Moldoff, Annotation, *Offense of Carrying concealed weapon as affected by manner of carrying and place of concealment*, 43 A.L.R.2d 492, § 4(c) (1955) (noting that various courts construe carry "to imply that the weapon is so placed that it is capable of moving with the person whenever he desires to move."); *Avery v. Commonwealth*, 3 S.W.2d 624, 626 (Ky. 1928) (holding that carrying a weapon requires that "it must be on the person or so connected or annexed to the person that the weapon is carried along as the person moves."); *Commonwealth v. Festa*, 40 A.2d 112, 116 (Pa. Super. Ct. 1944) (defining "carry" in the context of carrying concealed weapons as "a connection between the weapon and the carrier so 'that the locomotion of the body would carry with it the weapon as concealed.'").

By enacting Code § 18.2-308.012, the General Assembly specifically targeted persons permitted to carry concealed handguns and sought to prevent them from carrying that handgun in a public place while intoxicated. When reading the statute in context with the public place aspect, it is evident that the General Assembly did not envision criminalizing the transportation of a handgun within a bag located in a vehicle. Rather, the legislature sought something more specific. It intended to deter intoxicated individuals from physically carrying a concealed

7

handgun – whether it be in their waistband, pocket, etc. – in and out of public establishments. Contrary to the Commonwealth's argument, allowing a broad interpretation would stretch this purpose and punish behavior the legislature never intended to forbid. Indeed, if "carry" included transportation, it would add another charge to an intoxicated individual who attempted to act responsibly by placing his holstered weapon in the trunk of his vehicle. Accordingly, we hold that "carry" within the meaning of Code § 18.2-308.012 is limited to physically carrying the handgun on one's person such that it moves when he moves.

Turning to this case, Morgan had a valid concealed weapons permit and provided it to the officer during the traffic stop. Morgan did not physically carry the handgun on his person, but rather, the handgun was holstered and contained within a small, zipped backpack on the front passenger seat of his vehicle. Under these facts, Morgan did not "carry" the handgun as contemplated by Code § 18.2-308.012, and his conviction was in error.

## III. CONCLUSION

For the foregoing reasons, the Court of Appeals' judgment upholding Morgan's conviction under Code § 18.2-308.012 will be reversed and the charge dismissed.

*Reversed and final judgment.*

8